PARSONS (SOUTHWESTERN RAILROAD BANK v.). See Case No. 13,193.

---

## Case No. 10,782.

### PARSONS v. TERRY et al.

[1 Lowell, 60.] [1]

District Court, D. Massachusetts. April, 1866.

SHIPPING ARTICLES—DEPRIVING MASTER OF WHALING SHIP OF HIS COMMAND—DAMAGES—DISTILLED SPIRITS ON BOARD VESSEL.

1. The master and co-owner of a whaling ship who has contracted for a cruise of four seasons at a certain lay, and is wrongfully deprived of his command at the end of three seasons, may have an action against his co-owners for damages for his removal.

[Cited in Brown v. Hicks, 24 Fed. 813.]

2. The measure of damages in such a case is the probable value of his lay for the season on which he was about to enter when displaced.

3. A clause of the shipping articles, prohibiting the bringing on board ship of distilled spirits, is not broken by carrying Madeira wine on freight.

Libel in personam by [William C. Parsons] the late master, who was also a part-owner of the whaling ship William & Henry, of Fairhaven, against [Isaiah F. Terry and others] his co-owners. As originally framed, it included a demand for the libellant's lay as master for the voyage in controversy, but that ground of action was abandoned, and the cause proceeded as one seeking damages for an alleged tort in depriving the libellant of his command before the end of his term of service, which was a long one. The owners sent out another master from home, who, at Tombas, in Peru, took possession of the vessel in the temporary absence of the libellant on shore; and the consul told the libellant that he would be displaced by force, if necessary, and he therefore yielded possession of

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

the ship, and came home, arriving in December, 1862. His engagement extended to one off-shore cruise or season beyond that time. The respondents set up that the master was removed for due cause; if not, that no cause of action existed, because owners may remove a master at their pleasure; and lastly, that no damages could be given, because none can be ascertained with any legal certainty in regard to a cruise which never took place, and which might have resulted in a loss instead of a gain. The master, after being out some three years, was obliged to put into Valparaiso for repairs; the owners did not receive his accounts for these repairs, and became alarmed by this and by some expressions in his letters, and determined to recall him. The master, in fact, took the usual course with his accounts, and they miscarried through some fault or accident not attributable to him.

R. H. Dana, Jr., and T. K. Lothrop, for libellant.

T. D. Eliot and T. M. Stetson, for respondents.

LOWELL, District Judge. I am unable to see in the letters of the master any thing that should alarm a constant mind. That he reports the price at which he can sell the vessel, and even that the price reported was less after the repairs than before, and says that if a power of attorney shall be sent him he can dispose of the vessel thus or so, cannot fairly raise the inference that he means to sell the vessel, whether power is given him or not, and run away with the money, especially as he had sent home the oil which was the most valuable property in his charge. Yet this is the inference the respondents say they drew from these apparently innocent letters. If they did, it must have been upon the report of what some other masters had done in those distant regions, and not on the face of this correspondence. But the great powers which they had intrusted to the master were as well known to them before he sailed as afterwards, and the appropriate time to consider whether they would run the risk was before his appointment. After the trial is made he must be judged by his conduct.

Upon a careful examination of his conduct in all its particulars,—and it was most fully disclosed in the course of the trial,—I am of opinion with the experienced shipmaster who went out to supersede the libellant, that the owners acted upon a mistaken and ungrounded apprehension, and that Captain Parsons' conduct is not open to the imputations cast upon it. And this I desire to say with emphasis, because the charges have not been retracted.

This being so, is the libellant entitled to any, and if any, what damages? It is said to be one of the reserved rights of ship-owners to remove a master at pleasure, and so must be presumed to enter into their contracts as

an implied condition; and the exercise of the right, therefore, will give no cause of action. It is certain that this right is often exercised, though always, no doubt, as in this case, upon cause real or supposed, justifying the measure. And it has been thought that the trust reposed in the master is of so high a nature, and the interests of the owners are so important and overruling, as compared with his, that from motives of large policy, the appointment must be considered revocable. See 1 Bell, Com. Laws of Scotland, 412, No. 432. In the only reported case in this country which I have found, a court of admiralty refused to compel owners at the suit of the master, to perform their contract specifically and send him on the voyage against their wish, though he had signed the bills of lading and shipped the men. Montgomery v. Wharton [Case No. 9,737], and on appeal, 1 Dall. [1 U. S.] 49. But both the learned author above cited, and the court and bar in the reported case, say that the master could have an action for damages if his removal was without due cause arising out of his own conduct. And so is the law of England. The merchant shipping act of that country provides for a judicial investigation before a master is removed in the course of a voyage; and if the mode pointed out by the law is not followed, the master may have his action. The Camilla, Swab. 312. The law of France gives large (exorbitante is the word used by M. Pardessus), though fixed damages, in like cases.  •

Mr. Curtis, in his treatise on Merchant Seamen, says the question is still an open one; but he himself concludes, after an examination of the authorities, and relying especially upon the weighty opinion of Valin, that by the general maritime law the owners may remove a master, but if they do so without good cause after an engagement for a particular voyage, they will be bound to pay him damages for the loss of his employment. Curt. Merch. Seam. 165. Chancellor Kent does not discuss the point, but cites the opinion of Mr. Curtis without comment. 3 Kent, Comm. (5th Ed.) 162, note b. In the recent case of Dennis v. Maxwell (which will appear in the tenth volume of Mr. Allen's reports) 10 Allen, 138, the supreme court of Massachusetts gave damages in such a case; but this point was not raised. So far as it goes it is in favor of the libellant. I have found no authority or dictum against him; and I can hardly see room for doubt at common law.

It appears to be the better opinion that, by the general maritime law, an action for damages can be sustained. We are not particularly concerned here with the extent of the owners' powers, but only with the master's rights. It may be that the owners can remove, and yet the master can claim indemnity. A person cannot ordinarily be held responsible in damages for the exercise of an undoubted right. Still there are such cases.

The right of eminent domain, in some modes of its exercise, is a conspicuous example of this; for there exists on the one side a clear right to take private property for public uses, and on the other a clear right to be paid for the property taken. But however this may be, I am clear that this action can be maintained. The engagement of a master of a ship is not only an agency, but also a hiring of services. If the principals can revoke the agency, the employers must pay the servant his hire. The mere relation of principal and agent may be renounced by either party; but the master of a ship cannot lawfully desert her during the voyage; neither can the owners turn him out without compensation.

What is the measure of damages? Upon this point the above-mentioned case of Dennis v. Maxwell is explicit. The court there gave the plaintiff the sum which his lay would probably have amounted to. And I have no doubt this is the true rule. Courts are always reluctant to examine into conjectural damages, and where there is any standard or market price, will adopt it. For instance, if masters of whaling vessels were paid by the month, as other commanders of merchant vessels are, we should take the current rate of pay at the time, in the absence of express contract, rather than any more uncertain and contingent rule. But there is no such standard applicable to this case, and so we are obliged to ascertain what the contract was actually worth to the libellant, by discovering, as the jury did in that case, the average catch of vessels on that ground during the season, and calculating the libellant's lay accordingly. An experienced assessor will perhaps be as competent to arrive at the true result as a jury would be.

There is one other point of damages which was rather taken for granted on both sides than argued, but upon which a great deal of evidence was given; it is whether injury to the plaintiff's reputation can be considered in this action. From the consideration which, without a special argument or examination of authorities, I have given the subject, I do not see how that matter can be gone into here. This is not an action of slander, nor has this court jurisdiction of such an action. It is in fact, however the form may be, a suit for breach of contract; and damages are to be assessed on the same rule for the same injury whatever the form of action. As the point was not fully discussed, the libellant may, if he chooses, be heard further upon it upon the coming in of the assessor's report, upon notice to the other side that he shall bring it up at that time.[2]

With regard to the allegation that the libellant has forfeited all his wages by carrying some casks of Madeira wine, when the shipping articles prohibit the bringing distilled spirits on board the ship under pain of such

---

[2] After a hearing on the assessor's report this view was adhered to.

forfeiture, I can only say that wine is not distilled spirits, and cannot be made so by a usage of the port of New Bedford, or any other process that I am acquainted with, except distillation.

Interlocutory decree for the libellant.