THE HOPE AND FREDDIE L. PORTER.*

*(District Court, D. Maine.   December, 1880.)*

1. COLLISION—DAMAGES—UNEARNED FREIGHT.

A vessel, chartered for a fixed term of time, was totally lost by collision, while in the performance of her employment, and before the contract had expired. *Held,* that the owners were entitled to recover, as damages, the net profits which they would have realized under the agreement, for the whole period, if the vessel had not been lost.—[ED.

Fox, D. J.   The Freddie L. Porter having been held accountable for the loss of the Hope, the case is now presented on exceptions to the report of the assessor in the matter of damages.

The report finds that "at the time of her loss the Hope was employed in carrying stone for the season, by a verbal contract, and that at the close of the season her owners would have received $450 for their proportion of the net earnings from the date of the loss."   The value of the Hope is fixed at $950, and these two sums, amounting to $1,400, are allowed by the assessor as damages sustained by her owners from the collision, with interest from such date as the court may deem equitable.

The assessor has also filed with his report the testimony, as taken from his minutes, which he admits are not full and complete.   As reported, the evidence does not warrant the finding of the assessor "that the Hope was hired for the season," and the parties have agreed that, instead of recommitting the report, the witness should be recalled and examined before me upon this point.   It is sufficient to remark that his testimony now given, fully sustains this finding "that the Hope was sailing, at the time of the loss, under a legal contract for her employment during the entire season, the net profits from which, to her owners, would have amounted to $450."

Exception is made as to the allowance of $450 for the owners' share of her earnings from the date of the loss to the

*See 3 FED. REP. 89.

close of the season, under the contract for her employment during that time. In cases of a partial loss of the vessel by collision, the authorities, both in England and this country, at the present day, agree in allowing as damages against the wrong-doer the profits which would have accrued from a beneficial charter. One of the latest is *The Consett*, 5 Probate Div. 229, decided in June last by Sir Robert Phillimore. She was in ballast, on a voyage from Antwerp to Montreal, to load a cargo of grain. The collision occurred the tenth of October, and she was compelled to put into Queenstown for repairs. The charter was a profitable one, and the owners of the ship did not abandon it until it became apparent the ship could not be repaired in season to resume her voyage and perform her charter. The court decided that the abandonment of the charter was justifiable, and that the profit of the charter being thereby lost was damage for which the appellants were liable. At the time of the collision the ship was not earning any freight, but she was bound, in ballast, to a port where she was to receive a cargo on board and transport the same to Europe, and by so doing would have made a profitable voyage. There was the contingency in the first place of her ever reaching Montreal; and, secondly, of her charterers being ready to furnish her with a cargo in accordance with their agreement; and, lastly, whether she would accomplish the homeward voyage and earn her freight; but the court of admiralty held that, notwithstanding such contingencies, the loss of the profit from the charter, by reason of the collision, was so direct and certain that the guilty party was chargeable for the loss thus sustained from his negligence.

Where the vessel was sunk, and became a total loss, this principle has not always received the approval of the English admiralty court. In 1849, in 3 W. Rob. 164, (*The Columbus*,) Dr. Lushington said: "Suppose, for instance, that this vessel had been an East Indiaman, bound on her outward voyage to the East Indies, with a valuable cargo on board, for the transportation of which not only would the owners be

entitled to a large amount of freight, but the master might be entitled to considerable contingent profits from the allowances made to him upon such a voyage.   Could this court take upon itself to decide upon the amount of these contingencies, and to decree the payment of·the same, in addition to the payment of the full value of the ship?   I am clearly of the opinion that it could not.   The true rule of law in such a case would, I conceive, be this, namely: to calculate the value of the property destroyed at the time of the loss, and to pay it to the owners as a full indemnity to them for all that may have happened, without entering for a moment into any other consideration.   If the principle to the contrary, contended for by the owners of the smack in this case, were once admitted, I see no limit, in its application, to the difficulties which would be enforced upon the court.   It would extend to almost endless ramifications, and in every case I might be called upon to determine, not only the value of the ship, but the profits to be derived on the voyage in which she might be engaged, and, indeed, even to those of the return voyage, which might be said to have been defeated by the collision."   In this case the court only allowed the value of the ship, and denied the claim of the master for the wages or average profits he would have earned from time of collision,   1 Parsons on Ship. & Adm. 540, 541, note.   Notwithstanding this positive language of one of the most learned among the judges of the high court of admiralty, it is found that, in some instances, that court has not conformed to these views.

In the *Betsey Carnes*, 2 Hagg. 28, a smack was run down through negligence, while engaged in rendering salvage service to another vessel, and Lord Stowell allowed, in addition to the value of the smack, damages for the loss of the expected salvage reward.  See, also, *The Yorkshireman*, 2 Hagg. 30, note.

In 1860, *The Canada*, Lushington, 584, was decided.  That vessel was carrying cargo from Cadiz to St. Johns, under a charter to carry timber from Quebec to England.   She was totally lost by a collision on the voyage to St. Johns.   The

owners obtained a judgment in the court of admiralty, and the damages were referred to the registrar and merchants. The registrar, in his reasons annexed to his report, stated: "The principle which has always governed our decisions in cases of this description is to allow the gross freight, less the charges which would have been necessarily incurred in carrying such freight, and which were saved to the owners by the accident."

The admiralty courts in this country do not recognize the distinction between cases of total and partial loss in fixing the damages caused by a collision, but in both cases they allow, as part of the damages, the net freight which the ship at the time of her loss was in process of earning. In *The Rebecca*, 1 B. & H. 356, Judge Betts allowed damages to the full value of the vessel and freight, although she was a total loss. In 2 Ben. 228, which was a case of total loss, *Blatchford*, C. J., says: "The vessel having been in the act of earning freight, the freight which she was thus in the act of earning and was lost by collision is allowed as a just measure of compensation." In support of this, he cites *The Gazelle*, 2 Wm. Rob. 279, and *Williamson* v. *Barrett*, 13 How. 101, neither of which were cases of total loss, as the injured vessel was repaired. The learned judge also refers to one of his own decisions, (*The Heroine*, 1 Ben. 227,) in which he says: "Upon the well-settled principle of allowing to the injured party as damages, in cases of collision, an indemnity to the extent of the loss sustained, the freight which the injured vessel was in the act of earning and has lost, is allowed as a just measure of compensation, but this must be net and not gross freight." In that case the libel claimed for the loss of the vessel, but the report does not show whether she was or not a total loss.

The question here presented was before the supreme court of the United States in *The Baltimore*, 8 Wall. 386. Judge Clifford there states as the rule: "If the vessel of the libellant is totally lost, the rule of damage is the market value of the vessel at the time of her destruction. Allowance for freight is made in such case, reckoning the gross freight, less the

charges, which would necessarily have been incurred in earning the same, and which were saved to the owner by the accident, together with interest on the same from the date of the probable termination of the voyage;" referring to and adopting the rule as stated by the registrar in *The Canada*, before cited. *The Cayuga*, 14 Wall. 278; 4 FED. REP. 928. *Restitutio in integrum* being the rule in cases of this nature, and the wrong-doer, by the weight of authority, being held to make good all the damages sustained by reason of his fault, whether the loss of the ship was total or partial, in the opinion of the court, the net profits which the libellants would have realized from the agreement for her employment, for the season under which she was sailing, were properly allowed by the assessor as part of the damages. This contract was obligatory on both parties, according to the report of the assessor and the additional testimony, and neither party could refuse to complete it without subjecting himself to a claim for damages. The report finds "it was a profitable contract for the Hope to the extent of $450," if she had not been prevented from earning it by the wrong-doing of the Freddie L. Porter. The case, therefore, is within the principle of *The Canada* and *The Consett*, and the claim for the net profits of the contract for employment for the season was rightfully allowed.

The only distinction between these cases and the present, waiving the question of total or partial loss, is that here the hiring of the Hope was for a fixed term of time instead of her being chartered for a single trip. This contract she had entered upon and in part completed; nearly one-half of the time of her employment had expired, and she was in the performance of it at the time of her destruction, while in the other cases the vessel was at the time of the loss sailing on an intermediate voyage to a port of destination, where her charter was to commence, and she was to receive a cargo in accordance with her charter. In the opinion of the court, this difference does not afford any support to the claim of the schooner that the right to recover for the loss of freight is too remote and contingent to be allowed, but rather tends to sus-

tain the claim of the libellants, as the Hope was sailing under the contract and earning the freight stipulated at the time of her destruction.

The libellants object to the sum of $950 allowed by the assessor as the value of the vessel. The testimony produced on this point before the assessor accompanies his report. It is sufficient to remark, that the usual conflict upon the value of a lost vessel exists; the estimates on the one side and the other varying from $750 to $2,600. The assessor is a man of large experience in such affairs, and no man in this state is better qualified to judge of such property. He has been a ship-master for many years, and of late a ship-broker and marine insurance agent, and has had great experience as an average adjuster and appraiser of vessels. He stated to the court that he had had some acquaintance with vessels of the description of the Hope and of their value. The court is satisfied with the value he has placed upon this vessel, and his report is therefore accepted and all objections are over-ruled.