BROWN *v.* HICKS.

(*Circuit Court, D. Massachusetts.* August 26, 1885.)

1. MASTER—WHALING VOYAGE—AGREEMENT—RECALLING VESSEL—DAMAGES.

B. entered into an agreement with the agent of the bark Andrew Hicks, "to proceed from the port of New Bedford to Mahe, Seychelles islands, by steamer, and on his arrival there to take charge as master of the bark Andrew Hicks, and perform a whaling voyage in said bark not exceeding three years in duration, and return with said bark to the port of New Bedford," and the agent agreed to pay him "the one-fifteenth lay or share of the net proceeds of the cargo obtained by said bark during the term of his service as master thereof." The voyage not proving successful, the agent recalled the bark before the expiration of three years. *Held,* that the contract should be construed to mean that the voyage was to last three years unless its purpose was accomplished within a shorter period, and that B. was entitled to recover damages for a breach of the agreement under the circumstances of this case.

2. Same—Profits in Lieu of Wages—Partnership.
    Where the master of a ship contracts to receive a certain proportion of the
    profits of the voyage in lieu of wages, this does not constitute him a partner
    with the owner.

Admiralty Appeal.   See 8 Fed. Rep. 155.

*W. C. Parker*, for appellant, Roswell Brown.

*W. H. Cobb*, for appellee, Andrew Hicks.

Colt, J.   This is a libel *in personam* brought by the master of the
bark Andrew Hicks against the owner for an alleged breach of con-
tract.   The libelant shipped as master under the following agreement
between himself and the respondent:

"This agreement, made this day by and between Andrew Hicks, agent of
bark Andrew Hicks, of Westport, state of Massachusetts, and Roswell Brown,
of Fairhaven, state aforesaid, master mariner, witnesseth: that the said Ros-
well Brown hereby agrees to proceed from the port of New Bedford to Mahe,
Seychelles islands, by steamer, and on his arrival there to take charge, as
master, of the bark Andrew Hicks, and perform a whaling voyage in said
bark not exceeding three years in duration, and return with said bark to the
port of New Bedford.   For and in consideration of said services as master the
said Andrew Hicks, agent, hereby agrees to pay the said Brown the one-fif-
teenth lay or share of the net proceeds of the cargo obtained by said bark dur-
ing the term of his service as master thereof."

On August 31, 1877, the libelant left New Bedford for Mahe, and
on December 15th he took charge of the vessel.   January 10, 1878,
he went to sea and returned to Mahe, February 3d, when the second
mate was discharged.   February 14th, he went to sea again, cruising
off Mahe banks, and returned a few days afterwards to Mahe to get
deserters.   On February 23d, when ready for sea again, Samson,
the first mate, refused to go, and was discharged.   The vessel put to
sea on March 4th, and cruised until July 29th, when she arrived at
Helena.   On July 30th she started for New Bedford, arriving Octo-
ber 19th.   On February 24, 1878, the libelant wrote to the agent as
follows:

"I have decided to make St. Helena my next port.   Shall be there by the
last of July, when I shall expect to hear from you.   I should say, if I might
be allowed to suggest, that you send me both a mate and a second mate, al-
though I can get along very well with Murray for second mate; the difficulty
will be to get some one to fill his place.   *   *   *   I feel that it is absolutely
necessary for the benefit of the voyage that a mate should be sent out.   It is pos-
sible I may get a very good man at St. Helena to take Murray's place, although
I think it would be the better plan to send a man, providing you have a chance
to send them direct to St. Helena by a sailing vessel.   *   *   *   I might al-
most say, two months and a half I have had nothing but vexations and trials.
Just as I thought I had everything fixed for the next six months, Samson
gives up.   By this circumstance everything is reversed at once."

On receipt of this letter the respondent, after making inquiries
with a view to getting men to go out and join the vessel, and not
finding any one he deemed suitable, consulted with his co-owners,
and all agreed it was best to order the vessel home.   He accordingly,
on April 25, wrote to the master that he wished the vessel to proceed

directly home, as he thought it best for all concerned. This letter was received July 29, and on the same day the libelant wrote the respondent:

"I very reluctantly comply with your request; your views may be right to a certain extent, as I am situated now, for we have seen sperm whales three times since we left Mahe banks, but taken no oil. I believe if we had been properly manned we should have made a good show, although the chances were not the best. * * * But as you think it best for all concerned that the ship shall return to New Bedford direct. I will bring her there as fast as wind and weather will permit."

Under these circumstances can the libelant recover damages?

The contract was to perform a whaling voyage not exceeding three years in duration. A contract to perform a whaling voyage is a contract to cruise for whales and obtain a cargo of oil, if it can be done within the period prescribed. It does not mean a voyage to the whaling grounds and return. According to the size of the vessel, it may take three or five years to obtain a cargo. It is necessary that there should be some limit as to time, otherwise the ship might be kept away from home indefinitely. We think the fair interpretation of the contract is that the voyage was to last three years, unless its purpose was accomplished within a shorter period. The owner may have a right to recall the vessel and terminate the voyage at any time within the three years, or before the purpose of the voyage is accomplished; but, if he does this, he must show proper cause, or he should be held liable upon his contract with the master. *Parsons* v. *Terry*, 1 Low. 60.

The relation of the libelant to the owner was not that of partnership, but of servant and master. Where the master of a ship contracts to receive a certain proportion of the profits in lieu of wages, this does not constitute him a partner with the owner. "There is no pretense, therefore, for saying that the captain was a partner because his wages were to be regulated and paid by reference to a calculation on the profits of the adventure," says Lord ELLENBOROUGH in *Mair* v. *Glennie*, 4 Maule & S. 240. See, also, 2 Pars. Shipp. & Adm. 57; Story, Partn. § 42; *Baxter* v. *Rodman*, 3 Pick. 435; *Parsons* v. *Terry*, 1 Low. 60.

A termination of the voyage by the owner, under the circumstances presented in this case, would not, in our opinion, prevent the master from claiming damages for breach of contract. It was the duty of the owner to provide the ship with an outfit suitable for the successful prosecution of the voyage, and while he might conclude it was best to terminate the voyage, because he believed it would prove unsuccessful, yet this would not relieve him from his contract unless the master was to blame. We fail to discover any fault on the part of the master, nor does the respondent seek to charge him with blame, but takes the position that it was best for all parties in interest that the voyage should end.

We think the libelant is entitled to damages, and that the measure

of damages is the sum which his lay would probably have amounted to, calculated upon the basis of the average catch of vessels on the ground from the time the libelant received directions to proceed home to the expiration of the three years, deducting the time it would take for the return voyage to New Bedford. *Parsons* v. *Terry,* 1 Low. 60.

The decree of the district court is reversed.