## THE HAMILTON.

(District Court, E. D. New York. July 21, 1899.)

COLLISION—TOTAL LOSS OF VESSEL—DAMAGES—CHARTER PARTY.

Where a ship is a total loss, as the result of a collision, the measure of damages is her value, with interest, and compensation for loss of use is not recoverable in such case, as it is presumed to be covered by the restoration; and the fact that the vessel had entered upon the performance of a charter party does not change the rule.

In Admiralty. On exceptions to libel to recover damages for collision.

Butler, Notman, Joline & Mynderse and Mr. Brown, for libelants.
Cowen, Wing, Putnam & Burlingham and Mr. Putnam, for claimant.

THOMAS, District Judge. The claimant excepts to a libel alleging damages arising from the total loss of a ship from a collision, which damages consist of two items, to wit, $125,000, the value of the ship, and about $75,000, the net gain that would have come from fulfilling a charter party upon which the ship had entered. If this rule of damage be correct, libelants at once after the destruction of the ship were entitled to receive $200,000, which sum comprises the value of the ship, and her net earnings under the charter party during the continuance thereof. A charter party is a mere hiring of a ship, and the compensation reserved in charter parties is a matter usually influenced or determined by current market values. If the libelants' lawful damages were paid, they would be privileged to pursue one of two courses for the purpose of utilizing the money; first, purchase a new ship and put her at service; second, invest the money in other property. The adoption of the first course would result, in legal theory, in the attainment of a rental equal to that stipulated in the charter party. Therefore, at the time when the charter party would have expired, the libelants would have not only $200,000, received from the claimant, but also the further sum of $75,000, earned by the investment of $125,000 of such money in a ship equivalent in value and earning power to the one destroyed. To this should be added the return upon the $75,000. Therefore the libelants would have at least $75,000, and the interest on $75,000, more than they would have had if the loss had not occurred. Why is this? It happens because the libelants have been paid the gain on their money twice: first, by the anticipation and capitalization of such gain at the time of the loss; second, by the actual use, during the time limited in the charter, of the new ship, procured with the money received for the lost ship. So, if the $200,000 were invested at the legal rate of interest during the unexpired time, something over $12,000 would be received; giving the libelants, at the expiration of the time limited in the charter, the sum of $212,000, or $12,000 more than they would have received had not the loss occurred. What can be said of a rule of damages that works out such unearned gain to the person injured? It is no objection to this method of

reasoning that practically time would be lost in buying a new ship. In the theory of the law, the time lost is met by the use of the money, and, indeed, it is contemplated that the market abounds in ships awaiting purchase, so that with the $125,000 the libelants may at once substitute a new ship for the one lost. And also a ship is assumed to be profitable according to the market value of her use, and to be always able to earn freight according to that market value. Hence she has, in legal theory, no greater value because under charter than otherwise. If she were but a partial loss, her loss of use would be estimated by experts, and the result would not differ widely from the hire stated in the charter. While the charter might be considered in determining the market value of the use of the ship, it would not be conclusive, as it would be a contract inter alios. A person is bound to pay the market value, not the value provided by contract between other parties. This mathematical demonstration condemns the libelants' rule of damages. The rule relating to the injury of personal property on land is that the value of the property, if totally destroyed or injured beyond profitable repair, is recoverable, with interest; but if the property be injured, but be capable of economical restoration, compensation for its diminished value and for the loss of its use is recoverable. The same rule applies to ships injured or destroyed, but the freight lost on the voyage undertaken pertains to the ship, and is recoverable. But, where the ship is a total loss, compensation for the loss of use is not recoverable, for the precise reason that it is included in the recovery of the value, because there inheres in the sum recovered an earning power equivalent to the loss of use. The true rule is stated in The Amiable Nancy, 3 Wheat. 546; Fabre v. Steamship Co., 3 C. C. A. 534, 53 Fed. 288, 293; The Umbria, 166 U. S. 404, 17 Sup. Ct. 610. It was held otherwise in The Freddie L. Porter, 8 Fed. 170, concerning which The North Star, 44 Fed. 492, 495, and The Umbria, 166 U. S. 423, 17 Sup. Ct. 610, may be consulted. The learned advocate for the libelants urges that the rule applies only when the thing lost is capable of substitution, and when the charter party has not been entered upon. But the law does not consider that the sunken ship is incapable of replacement. It rather considers that ships are commodities bought and sold in the market, and that one may be purchased to take the place of one lost, and that, even if there be delay, the interest on the money compensates for any loss thereby. It is immaterial that the charter party has been entered upon. There is nothing mysterious about a charter party. It is in fact a leasing of a ship. Shall it be said that a person may lease an item of personal property, and upon its destruction recover from the wrongdoer both the value of the subject of the lease and the value of the lease? The suggestion does not accord with usual principles. The claimant should give a bond for the value of the ship, which is stated in the libel at the sum of $125,000.