George L. BARGER, Plaintiff-Appellee

v.

Bernard A. HANSON, Defendant-Appellant.

No. 24630.

United States Court of Appeals, Ninth Circuit.

May 1, 1970.

---

26. *Id.* at 921.

27. 367 F.2d 25 (3 Cir. 1966).

Dwight L. Guy, of Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for defendant-appellant.

Gordon A. Scraggin, of Copeland, King & Scraggin, Tacoma, Wash., for plaintiff-appellee.

Before DUNIWAY, WRIGHT and TRASK, Circuit Judges.

TRASK, Circuit Judge.

This is an appeal by Bernard A. Hanson from a judgment in admiralty awarding damages to appellee George L. Barger for loss of use of his fishing vessel which was totally destroyed in a collision with a vessel owned by Hanson.

The facts of the case, as stipulated by the parties, are as follows: On June 3, 1967, Hanson's fishing vessel collided with Barger's vessel which was moored at Neah Bay, Washington. The proximate cause of the collision was the negligent operation of Hanson's boat. Barger and his vessel were free of fault. The vessel was a total loss. At the time, he had been outfitting it in preparation for the commercial salmon fishing season, and would have been ready to commence fishing on June 7. Barger began searching for a replacement vessel, subsequently found one, outfitted it, and began

fishing on July 5, 1967. On January 9, 1968, Barger brought suit against Hanson in the District Court. The court, following a non-jury trial on April 10, 1969, awarded Barger damages of (1) $2,384.50 for the value of his vessel, (2) $279.00 for the value of his personal property lost in the vessel, and (3) $984.48 for loss of use of the vessel from June 7, through July 4, 1967. Hanson now appeals from that part of the judgment awarding damages for loss of use of the vessel.

■ In admiralty the maxim for computing damages in case of collision is "restitutio in integrum" or restoration to the previous condition. The Baltimore, 75 U.S. (8 Wall.) 377, 385, 19 L.Ed. 463 (1869); The President Madison, 91 F.2d 835, 845 (9th Cir. 1937). In case of total loss, the measure is the value of the property lost, on the basis of the same principle. Standard Oil Co. v. Southern Pacific Co., 268 U.S. 146, 158, 45 S.Ct. 465, 69 L.Ed. 890 (1925); The President Madison, *supra*, 91 F.2d at 845–846. The rules to be applied are substantially the same as the rules governing the determination of damages in ordinary cases. The Hamilton, 95 F. 844, 845 (E.D.N.Y. 1899); 2 Am.Jur.2d Admiralty § 210 at 845 (1962).

■ Where a ship is a total loss because of collision, the well-settled rule is that the aggrieved party may not recover compensation for contemplated profits or the loss of use of the ship. Damages are limited to the value of the ship, plus interest and the net freight pending at the time of the collision. The Umbria, 166 U.S. 404, 421–422, 17 S.Ct. 610, 41 L.Ed. 1053 (1897); The Redwood, 81 F.2d 680, 685–686 (9th Cir. 1936).[1] This rule has been applied

---

1. Damages for loss of use or "demurrage" may be awarded under other factual circumstances not present here; e. g., where a ship is but partially damaged. The Umbria, *supra*, 166 U.S. at 421–422, 17 S.Ct. 610; The Conqueror, 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937 (1897); Van Camp Sea Food Co., Inc. v. Di Leva,

171 F.2d 454 (9th Cir. 1948); Carbone v. Ursich, 209 F.2d 178 (9th Cir. 1953). The contemplated net profits of a charter have been awarded where a ship suffered total loss after it had entered into, but had not fully performed, the charter. The Hope & Freddie L. Porter, 5 F. 822, 825 (D.Me.1880), aff'd, 8 F. 170 (C.C.Me.

to deny damages for loss of probable catch to the owner of a destroyed fishing vessel. Guibert & Sons v. British Ship George Bell, 3 F. 581, 588 (D.Md.1880); The Menominee, 125 F. 530 (E.D.N.Y. 1903).

Two reasons have been given for this rule. One is that contemplated profits are too speculative a measure of damages. The Umbria, *supra*; The Amiable Nancy, 16 U.S. (3 Wheat.) 546, 560–561, 4 L.Ed. 456 (1818). The other is that,

"[T]he law does not consider that the sunken ship is incapable of replacement. It rather considers that ships are commodities bought and sold in the market, and that one may be purchased to take the place of one lost, and that, even if there be delay, the interest on the money compensates for any loss thereby." The Hamilton, *supra*, 95 F. at 845.

Neither reason applies to this case. The damages for loss of use were not speculative and appellant raises no question concerning the amount or its computation. The District Judge found, and both parties agreed on appeal, that plaintiff Barger replaced his lost vessel as quickly as possible. The parties stipulated that,

"The collision occurred during the commercial salmon trolling season and as a result there was a shortage of suitable trollers on the market which could be purchased by plaintiff as a replacement vessel. Immediately after the loss of his vessel, plaintiff began to look for a replacement vessel. Plaintiff searched diligently for a replacement vessel but none was readily available.

"Plaintiff subsequently succeeded in acquiring a replacement vessel and because of his diligence was able to commence fishing on July 5, 1967."

There is no evidence that the aggrieved shipowners in any of the cases cited mitigated their damages by promptly purchasing another vessel.

Another rationale of the cases involving total destruction is that an award of the total value together with interest from the date of the loss affords complete restitition. The theory must be that the interest on the principal item of damage will compensate the injured party from the date of the loss until the judgment is paid. From that date forward the injured party has both the principal amount and the accumulated interest in hand and can re-invest it to return to the business in which he was formerly engaged. The Hamilton, *supra*, 95 F. at 845.

Appellant here contends that to award loss of profits is to permit double recovery. An examination of the opinion and judgment of the court, however, discloses that the award was for the value of the vessel lost, the value of the personal property lost with it and the value of the prospective catch in the sum of $984.48 plus costs. Although the loss occurred on June 3, 1967, no interest was awarded. The judgment was dated May 5, 1960. In addition we see here the situation of an owner-fisherman. The loss of his boat and equipment at the beginning of the season amounts to the loss of the tools of his trade.

■ Under the particular circumstances of this case, where the parties stipulated as to the exact amount of

---

1881). Contemplated profits of the voyage on which the vessel was engaged when it suffered total loss were awarded in The June Ames, 66 F.2d 415, 416 (2d Cir. 1933). More recently the traditional distinction between the measure of damages for partial and total losses has received added consideration. *See, e. g.,* George Bohannon Transport., Inc. v. Davis, 323 F.2d 755, 757–758 (10th Cir. 1963);

Knapp v. Styer, 280 F.2d 384, 390–391 (8th Cir. 1960); Reynolds v. Bank of America, 53 Cal.2d 49, 345 P.2d 926, 927 (1959); Annot., 18 A.L.R.3d 497, 519–521 (1968). It does not appear appropriate to reexamine the rule here where it has not received the benefit of careful adversary briefing and argument in the context of a clear issue of fact.

damages resulting from the loss of the ship's use and further stipulated that plaintiff promptly mitigated his damages and there was no award of interest, we consider that the District Court properly awarded damages to plaintiff-appellee for loss of use of his ship from the date of contemplated commencement of fishing to the date of mitigation—June 7 through July 4, 1967.[2]

The judgment is affirmed.

2. We recognize that loss of profits was denied despite a stipulation as to the amount of profits in Ozanic v. United States, 165 F.2d 738, 743 (2d Cir. 1948). Under the circumstances of this case we do not consider *Ozanic* apposite.