A & S TRANSPORTATION CO., INC., et al., Plaintiffs, Appellees,

v.

The TUG FAJARDO, etc., et al., Defendants, Appellees,

v.

The UNITED STATES of America, Third Party Defendant, Appellee.

PCI International, Inc., Plaintiff, Appellant.

No. 81–1770.

United States Court of Appeals, First Circuit.

Argued April 7, 1982.

Decided Sept. 1, 1982.

Nicolas Jimenez, with whom Jimenez & Fuste, San Juan, Puerto Rico, was on brief, for plaintiff, appellant.

William P. Kardaras, with whom Bigham, Englar, Jones & Houston, New York City, was on brief, for appellees.

Before FAIRCHILD,[*] Senior Circuit Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff PCI International, Inc. (PCI) seeks damages from Puerto Rico Lighterage Company and its underwriters for loss of use of a waste disposal barge of which it was the bareboat charterer. The barge was stranded, and became a total loss, while being towed by a tug (the "Fajardo") owned by Lighterage pursuant to a written agreement of towage with PCI. PCI asserts that the stranding was due to the carelessness of the tug, and that because of loss of use of the barge, and the difficulty of securing a suitable replacement, it was put to great expense in order to meet commitments to customers who had contracted for PCI to dispose of their chemical wastes at sea.

After the stranding, the underwriters of the barge determined that it was a constructive total loss, and reimbursed the owner, A & S Transportation Co., from whom PCI had chartered it, the full insured value of the hull (with certain adjustments) plus an additional sum under the sue and labor provisions of the policy. The owner, in return, assigned all its rights respecting the barge to the underwriters. The underwriters also reimbursed PCI, under the sue and labor provisions of the policy, PCI hav-

* Of the Seventh Circuit, sitting by designation.

ing been named in the policy as an additional insured, for certain amounts PCI had expended to preserve the wreck.

Thereafter PCI joined the owner and the barge's underwriters in this damages action against the tug, Lighterage, and their underwriters. Before trial, however, the barge's underwriters effected a settlement with defendants. As part of the settlement, they released defendants and assigned to them all rights of action, including all the rights which had been assigned to them by A & S.

After a trial, the district court sitting in admiralty rejected the owner's claims for damages in excess of the amount already received from its underwriters. The court held that the owner had effectively divested itself of any claims in the matter by its previous settlement and assignment to its own underwriters, who had thereafter settled with defendants. The owner has not appealed from this judgment.

The court also rejected appellant PCI's claims for consequential damages based on the uniqueness of the barge and alleged expenses incurred in procuring a substitute. Although PCI had not been a party to the settlement between the owner and the barge's underwriters, the court held that PCI, as a bareboat charterer, stood in the shoes of the owner. The court relied upon,

> The well-settled rule where a ship is a total loss ... the aggrieved party may not recover compensation for contemplated profits or the loss of use of the ship. Damages are limited to the value of the ship, plus interest and the net freight pending at the time of the collision. *The Umbria*, 166 U.S. 404 [17 S.Ct. 610, 41 L.Ed. 1053] (1897); *Barger v. Hanson*, [426 F.2d 640, 641 (9th Cir. 1970)].

The court acknowledged PCI's claims that the tug had been negligent as to it; that the tug's owner had committed a breach of duties owed to PCI individually under the towing contract; and, finally, that it had violated its implied warranty of workmanlike service owed to PCI under the towing contract. However, the court ruled that as bareboat charterer PCI was limited to the same damages an owner could have claimed in like circumstances, and that these would not have gone beyond the value of the totally lost vessel and of certain other items not material to PCI's claim. The court contrasted the situation with that which would have prevailed if the barge had been a partial, not a total, loss. In such case, the court said, the owner would have been entitled to lost earnings or to the cost of providing a substitute ship, citing *The Emma Kate Ross v. Myers Excursion Nav. Corp.*, 50 F. 845 (3d Cir. 1892).

We sustain the judgment of the district court. Where a vessel is totally lost, the measure of damages is its value at the time of loss, plus interest and the net freight pending at the time of the collision. *The Umbria*, 166 U.S. 404, 421–22, 17 S.Ct. at 617 (1897). Loss of use is not allowable. *Alkmeon Naviera, S.A. v. M/V Marina L*, 633 F.2d 789, 797 (9th Cir. 1980); *Ozanic v. United States*, 165 F.2d 738, 743 (2d Cir. 1948); *The Hamilton*, 95 F. 844 (E.D.N.Y. 1899).[1] While termed a "collision" rule, courts have applied it where barges under tow have been damaged or lost because of the inattention of the tug, and we see no reason not to apply it where the barge was stranded by the tug as here. *The June Ames*, 66 F.2d 415, 416 (2d Cir. 1933) (tow damaged by hitting abutment of a bridge through negligence of tug; rule in issue followed); *Mobile Towing & Wrecking Co. v. Dredge*, 299 F.Supp. 358, 367 (N.D.Fla. 1969) (tow sank as a result of tug's negligence; consequential damages denied). As the district court here recognized, damages for loss of use would have been recoverable had the loss been partial. *E.g.*, *The June Ames*, 66 F.2d at 416; *compare The Ames & Carroll No. 20*, 66 F.2d 413, 415 (2d Cir.

---

1. The profits of the same voyage on which the ship was engaged at the time of its loss have been allowed in the case of a total loss. *The June Ames*, 66 F.2d 415, 416 (2d Cir. 1933). In a total loss decision described by Circuit Judge Lowell as "an advance on any which has been made," District Judge Fox allowed the net freight for the unexpired time of a charter. *The Hope & Freddie L. Porter*, 5 F. 822, 825 (D.Me.1880), *aff'd*, 8 F. 170, 171 (C.C.Me.1881).

1933) (demurrage recoverable for loss of use during repairs).

The only deviation from this rule which has come to our attention occurred in *Barger v. Hanson*, 426 F.2d 640 (9th Cir. 1970), where, after citing the rule in its full strength, the circuit court nonetheless upheld damages for one month's loss of use of a destroyed fishing vessel. The court declined to re-examine the rule in the absence of careful adversary briefing and argument, but implied some dissatisfaction with it, and then proceeded to let the challenged damages item stand in lieu of interest which should have been, but was not, awarded.

We think the rule in question is too well-established to be altered now, at least at our level. While arguments may be made, pro and con, for its soundness as an original proposition, it was announced by the Supreme Court and has been followed by admiralty judges of the stature of Learned and Augustus Hand. *The June Ames, supra.* There is much to be said in the world of shipping and commerce for predictability, simplicity and stability of rules, so that shipowners and insurers may plan their financial exposure. PCI could have insured itself against the consequences of loss of use of this special barge had it thought to do so. G. Gilmore & C. Black, *The Law of Admiralty* § 4–22 (2d ed. 1975); Arnould, *Marine Insurance* § 300 n.73 (15th ed. 1961).

PCI argues that, as a bareboat charterer, not an owner, it should not be bound by a rule developed for owners—otherwise it will receive no recompense for the tug's mistake. Bareboat charterers, however, are ordinarily treated as if they are owners, *Reed v. Yaka*, 373 U.S. 410, 412, 83 S.Ct. 1349, 1351, 10 L.Ed.2d 448 (1963); *Williams v. McAllister Bros., Inc.*, 534 F.2d 19 (2d Cir. 1976); they acquire the character and become subject to the legal duties and responsibilities of ownership. *See Reed v. United States*, 78 U.S. (11 Wall.) 591, 600–07, 20 L.Ed. 220 (1871); *Leary v. United States*, 81 U.S. (14 Wall.) 607, 610, 20 L.Ed. 756 (1872). We recognize that the Supreme Court cases dealt only with situations in which the bare- boat charterer as a defendant was held to stand in the shoes of the owner, but we think that it must wear the same shoes here. It would be illogical to restrict owners in the recovery of special damages of this nature but to allow bareboat charterers to recover them. Owners, it is true, will in any event receive the value of their investment with interest, but these amounts will not necessarily make up for additional damages from the loss of a profitable charter or the inability to perform pending contracts with third parties. If owners are denied special damages of this type, it is difficult to see why a bareboat charterer should recover them. The liability of those responsible for the loss should not depend on whether the injured party is an owner or a bareboat charterer. As a practical matter, the question may often come down to whether the bareboat charterer or the putative tortfeasor should procure insurance against consequential damages. A good reason for placing this requirement on the charterer—at least where, as here, the uniqueness of the vessel or other special circumstances are claimed to create exceptionally high consequential damages—is that he is better able to predict the extent of consequential damages in the event the chartered vessel is lost. *Cf.* R. Posner, *Economic Analysis of Law* §§ 4.11, 6.8 (2d ed. 1977) (party best able to foresee consequences should take precaution against anticipated losses). When a bareboat charterer raised a claim similar to the present one in 1969, the district court dismissed it as "novel and imaginative" but "without basis in law." *Mobile Towing & Wrecking Co. v. Dredge*, 299 F.Supp. 358, 367 (N.D.Fla.1969). We agree that the claim for lost profits and other consequential damages lacks a basis in law.

*Affirmed.*