## UNITED STATES v. LAFLIN et al. *

Circuit Court of Appeals, Ninth Circuit. February 27, 1928.

No. 5233.

1. **Seamen** ⬅➡28—Crew's compensation held not deductible from gross probable income in fixing damages by interference with sealing (28 USCA § 52; 16 USCA § 644).

Crew's compensation, provided for in shipping articles stipulating that they should be paid certain shares of catch of whaling bark after return to port, *held* not deductible from gross probable income of venture in determining damages recoverable under 28 USCA § 52, for interference by United States vessels, on ground that bark was engaged in pelagic fur sealing outside three-mile limit, in violation of Rev. St. § 1956 (16 USCA § 644), and modus vivendi of April 18, 1892 (27 Stat. 952), between United States and Great Britain.

2. **Seamen** ⬅➡28—Seamen's agreed shares of profits of fishing or whaling voyage are in nature of wages, recoverable in actions brought after end of voyage.

Agreements by which seamen, engaged in fishing or whaling voyage, are to receive for their services shares of profits, are contracts of hiring, and such shares are in nature of wages, to recover which actions may be maintained after end of voyage.

3. **Seamen** ⬅➡28—Owner of whaling bark may sue, as crew's representative, for loss of their shares of profits by interference with sealing (28 USCA § 52).

Under 28 USCA § 52, owner of whaling bark may bring action, as representative of crew,

*Rehearing denied May 14, 1928.

for loss of their agreed shares of profits because of interference with sealing by United States vessels, as they may "submit their claims" through owner and sue him for damages if he should neglect to prosecute the claims.

4. **Seamen** ⬅➡28—Statute conferring jurisdiction to determine American citizens' claims for loss by interference with sealing must be presumed to have been enacted in view of vessel owner's right to represent crew as to lay (28 USCA § 52).

28 USCA § 52, conferring jurisdiction to hear and determine claims of American citizens for loss by interference of United States vessels with sealing, must be presumed to have been enacted in view of owner's right to represent crew, and without intention to exclude from amount recoverable agreed shares in profits of noncitizen members of crew.

5. **Seamen** ⬅➡28—Sailors having shares in proceeds of whaling venture as wages are not partners with vessel owners.

Sailors having certain lays or shares in proceeds of whaling venture as wages are never regarded as partners with owners of vessel, though they may participate in profits of voyage.

6. **Seamen** ⬅➡28—Whaling crew cannot join with vessel owners to recover proceeds of voyage.

Neither officers nor members of whaling crew may join with owners of vessel in recovery of proceeds of voyage in which they have certain shares, such owners and projectors of voyage being owners of products thereof.

7. **Trusts** ⬅➡63¾—Funds received by vessel owners as damages for interference with sealing are charged with trust for payment of crew's claims (28 USCA § 52).

Funds received by owners of whaling vessel under 28 USCA § 52, as damages for interference with sealing by United States vessels, are charged with trust for payment of claims of officers and crew of vessel to agreed shares in profits of voyage.

8. **Courts** ⬅➡343—Directors of dissolved California corporation can sue for damages by interference of United States vessels with sealing (Civ. Code Cal. § 400; Code Civ. Proc. Cal. §§ 565, 1227 et seq.; 28 USCA § 52).

Under Civ. Code Cal. § 400 and Code Civ. Proc. Cal. § 565, directors elected at last meeting of stockholders of California corporation before its voluntary dissolution under section 1227 et seq., can recover damages under 28 USCA § 52, for interference of United States vessels with sealing; such corporation being American citizen, of which directors, as trustees, are legal representatives.

9. **Citizens** ⬅➡10—Members of dissolved state corporation are presumably American citizens, entitled to recover damages by interference of United States vessels with sealing (28 USCA § 52).

Legal presumption is that members of dissolved corporation, which was American citizen because of its incorporation under state laws, were also American citizens, entitled to recover damages by interference of United States vessels with sealing, under 28 USCA § 52.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; Adolphus F. St. Sure, Judge.

Action by W. A. Laflin, as administrator of the estate of James Laflin, deceased, and others, against the United States. Judgment for plaintiffs, and the United States brings error. Affirmed.

Under the provisions of the Act of Congress of June 7, 1924, 43 Stat. 595, the defendants in error brought an action in the court below to recover for damages and loss occasioned by the interference of United States vessels with sealing in the Bering Sea. The complaint alleged that the whaling bark Lydia, of 313 tons net burden, was owned by certain named American citizens in specified shares and proportions; that on November 30, 1891, with a master and crew of 40 men, the Lydia cleared at the custom house at San Francisco on a sealing, walrus, and trading voyage, bound for the Northern Pacific and Arctic Oceans; that she proceeded upon her voyage until July, 1892, when she was boarded by a detail acting under orders of a commander of the navy, then commanding the Bering Sea patrol forces, on the ground that she was engaged in pelagic fur sealing outside of the three-mile limit and in violation of the modus vivendi of April 18, 1892 (27 Stat. 952), between the United States and Great Britain, and in violation of section 1956 of the Revised Statutes (16 USCA § 644); that the vessel was taken to Sitka, and on August 7, 1892, was turned over to the collector of customs; that thereby she was forcibly prevented from making said whaling and trading voyage and was forced to abandon the same. The complaint alleged that the value of the whales which the vessel was prevented from taking during the remainder of the whaling season in 1892 in Bering Sea amounted to the sum of $9,984, that the value of the whales which she was prevented from taking during the entire season of 1892 in the Arctic Ocean amounted to the sum of $28,020, and that the owners were damaged and suffered losses in those amounts. On the trial the proof offered to sustain the action was devoted to showing the amount of profits which would have been earned, had the seizure not occurred, and the probable catch of whales during the season. A stipulation between the parties placed the average weight of bone of a right whale at 1,200 pounds, the average amount of oil therefrom at 20 barrels, the average weight of all bone from a bowhead whale at 1,750 pounds, and the average amount of oil therefrom at 100 barrels, and the average market price of whale oil in 1892 at 28 cents a gallon, or $8.82 per barrel of 31½ gallons, and the average market price of whalebone at $3.50 a pound. Upon the evidence the court below found that by reason of the seizure of the vessel the owners suffered damages in the sum of $40,028.80, and that there should be deducted therefrom the usual cost of fitting out a vessel for an ordinary season, the cost of capturing whales, and the depreciation on the equipment for their pursuit, in the sum of $500, and judgment was rendered in the amount of $39,528.80, which was apportioned in varying amounts to the owners or their successors in interest, who were the plaintiffs in the action, according to their respective interests in the vessel.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

J. N. Gillett and H. H. North, both of San Francisco, Cal., for defendants in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] Counsel for the government assert that the principal point involved on the writ of error is presented in their assignment that the court below in appraising damages failed to diminish the gross probable income of the venture by deducting therefrom the probable expenses and outlay, including the cost of service and wages of necessary employés. To that proposition are cited cases such as Guerini Stone Co. v. P. J. Carlin Co., 240 U. S. 264, 280, 36 S. Ct. 300, 307 (60 L. Ed. 636) in which it was said: "No more definite or certain method of estimating the profits could well be adopted, than to deduct from the contract price the probable cost of furnishing the materials and doing the work." But the principle there involved has no relation to the present case.

The contention of the plaintiff in error is answered by the fact that the owners of the bark assumed no liability for the cost of the service of employés and were under no obligation to pay wages to the crew. The crew's compensation was provided for in the shipping articles. It was therein stipulated that, after the return of the bark to the port of San Francisco, each officer and seaman should be settled with and paid his share of the catch of said vessel in certain specified proportions, as soon as the quantity of her oil and bone could be ascertained, and the

master and crew signed an article stating the particular employment of each, and providing that they should receive a stated share as indicated therein. It is admitted that the court below, in appraising the amount of damages, took into consideration all the probable outlay incident to carrying on the enterprise, other than the compensation to be paid to the crew, and deducted that amount from the sum total of the damages. [2] It has been the maritime law from the time of Oleron that agreements, by which seamen, engaged in a fishing or whaling voyage, are to receive for their services shares of the profits of the voyage, are contracts of hiring, and the shares so agreed upon are in the nature of wages, to recover which actions may be maintained after the end of the voyage. Wilkinson v. Frasier, 8 Esp. 141; The Crusader, Fed. Cas. No. 3,456, 1 Ware, 448; Reed v. Hussey, Fed. Cas. No. 11,646, Blatchf. & How. 525, 539; Coffin v. Jenkins, Fed. Cas. No. 2,948, 3 Story, 108; Crowell v. Knight, Fed. Cas. No. 3,445, 2 Lowell, 307. No claim was made in the court below, nor is any here presented, that the members of the crew might have reduced the amount of their damages by entering into other employment during the period of time covered by their contract. Nor is there evidence to support such a contention.

[3, 4] In its brief in this court the plaintiff in error contends that the owners should not be taken as representing the crew of the vessel or possessed of the right to recover under the act for the losses sustained by the members thereof, and it relies upon the provision of the statute that "all American citizens whose rights were affected" may submit their claims. No objection was taken in the court below to the nonjoinder of the members of the crew, and no question was made of the right of the owners to represent them in the action. Nor does any assignment of error direct attention to either proposition.

We find no difficulty in sustaining the trial court's conclusion that the owner could bring the action as representing the crew, and that within the meaning of the statute the latter might "submit their claims" through him, and might sue him for damages, if he neglected to prosecute the same. The statute confers jurisdiction "to hear and determine the claims of American citizens." It must be presumed to have been enacted in view of the well-settled principles applicable to the owner's right to represent the crew in such cases, and without intention to exclude from the amount recoverable the shares of members of a crew who were not citizens of the United States.

[5, 6] It is well settled by the decisions that in whaling ventures the sailors who have a certain lay or share in the proceeds as wages are never regarded as partners with the owners, though they may participate in the profits of the voyage; and it is equally well settled that neither the officers nor members of the crew may join with the owners in a recovery of the proceeds of the voyage, and that the owners of the vessel and projectors of the voyage are the owners of the products thereof. In dealing with such a contract it was held in Lewis v. Chadbourne, 54 Me. 484, 92 Am. Dec. 558, that the crew are rather to be deemed hired seamen than partners or joint contractors, and in Baxter v. Rodman, 3 (Mass.) Pick. 435, answering the objection that by virtue of the contract on which the master and crew engaged in the voyage, they are to receive their pay out of the proceeds of the oil, they are joint owners and quasi partners, and so ought all to have joined in the action, the court said:

"That every seaman should be tenant in common with all the other seamen, the master and the owners of the vessel, in all the oil which may be taken on a whaling voyage, so that no action could be brought respecting it without joining all, and none could be sued without the whole, giving every seaman a right to discontinue the action, or to release the claim, or to receive payment for the whole, would be a state of things not suspected by the wise and enterprising men who have carried on the whale fishery. But we think it is not the law."

That ruling was followed in Grozier v. Atwood, 4 (Mass.) Pick. 234.

[7] In Taber v. Jenny, Fed. Cas. No. 13720, 1 Spr. 315, 322, it was said: "It is the right and duty of the owners to protect the products of the voyage, and if unlawfully taken by any one, to pursue and obtain them, and the seamen have then a right to share in the net avails. The owners must obtain and hold them for this purpose. Otherwise, the seamen could not get redress; they have no title to the property, and could maintain no action for it. If the owners neglect to take proper means to obtain indemnity, they would be responsible to seamen for that neglect. It is not for the respondents to say that the owners will not pay the crew. The respondents certainly have no right to their share; and an individual might as well say, when sued by a guardian, that perhaps he might never settle with his ward."

"It is clear from the foregoing and other

like decisions that the funds received by the owners in a case such as this are charged with a trust for the payment of the claims of the officers and crew of the vessel.

[8, 9] Error is assigned to the allowance of damages which were awarded to the Tallant Banking Company. The court below found that the banking company was a California corporation, and that the plaintiffs McKee, Brice, Tallant, and Monroe were the sole surviving directors and trustees thereof, that its charter had elapsed prior to the commencement of the action, but that said trustees had full power to represent the corporation for the benefit of its creditors and stockholders.

It is urged, contrary to the court's findings, that there was a voluntary dissolution by decree under section 1227 et seq. of the California Code of Civil Procedure, and that under the laws of the state, when a corporation thus ceases to exist, the stockholders become the owners of its former property as tenants in common, and that, inasmuch as the stockholders here are unnamed and unidentified, and are not shown to be citizens of the United States, and the corporation has ceased to be a citizen, there should be no recovery by the trustees. The corporation voluntarily dissolved on February 29, 1912. The above-named trustees were the directors elected at the last meeting of the stockholders, and no successors were thereafter elected or appointed. The decree of dissolution authorized the board of directors to settle all the affairs of the corporation and to distribute all its property and assets to its stockholders in proportion to their respective interests.

The Act of June 7, 1924 (28 USCA § 52) gave a right of action to the heirs and legal representatives of American citizens. The Tallant Banking Company, incorporated under the laws of the state of California, was an American citizen. The legal presumption is that its members were American citizens. Ohio & Mississippi Railroad Co. v. Wheeler, 1 Black, 286, 17 L. Ed. 130. In Havemeyer v. Superior Court, 84 Cal. 327, 24 P. 121, 10 L. R. A. 627, 18 Am. St. Rep. 192, it was held that under sections 400 of the Civil Code and 565 of the Code of Civil Procedure the administration of the assets of a dissolved corporation is left, as a rule, to the directors in office at the date of dissolution, whether the dissolution be voluntary or involuntary. Section 400 of the Civil Code provides: "Unless other persons are appointed by the court, the directors or managers of the affairs of a corporation at the

time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have full power to settle the affairs of the corporation." No time limit is placed upon the exercise of the power thus vested in the directors, and we find no warrant for holding that it expires before the final settlement of the affairs of the corporation.

The judgment is affirmed.