**VAN CAMP SEA FOOD CO., Inc. v. DI LEVA et al.**

No. 11877.

United States Court of Appeals Ninth Circuit.

Dec. 22, 1948.

McCutchen, Thomas, Matthews, Griffiths & Greene, Harold A. Black, George E. Toner, all of Los Angeles, Cal., for appellant.

Herbert R. Lande, of San Pedro, Cal., for appellees.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a final decree in admiralty which adjudged appellant employer liable to the 13 appellees, its employees on appellant's oil screw fishing boat Bessemer for loss of their earnings due to the layup of the vessel from a collision caused by the negligent navigation of the fishing boat Gloria R, also owned and operated by the appellant.

The libel was amended several times, but issue was joined on a fifth amended libel by exception and answer. No ruling on the exception was given by Judge Harrison, then presiding. On motion to set the cause for hearing, Judge Harrison disqualified himself and the case was transferred to Judge Hall for further proceedings.

On the evidence, it was found that the libellants were employees of the appellant for the then sardine fishing season. With this we agree. Their wages were shares of the value of the sardine catch,[1] which under the employment agreement belonged to the appellant, after deducting fuel and dockage charges and social security and withholding taxes.

The Gloria R's crew were similarly employed upon compensation dependent on the success of the season's fishing venture of that particular vessel. We regard each of the two vessels as engaged in separate ventures for the fishing season, composed of successive trips for fishing, each ending with the delivery of the fish at appellant's dock. Though having the same owner, the members of the crew of one vessel are not fellow servants of the captain and crew of the other. Cf. The Petrel [1893] L.R.P. 320, 326, 62 L.J.P. 92.

Appellant contends that its employees cannot sue it to recover the damage caused by its vessel the Gloria R, because it owns both vessels. More particularly, its contention is that if the Gloria R had been owned by some third party, the appellant, as owner of the Bessemer, would have had the sole right to sue the Gloria R's owner for the Gloria R's wrongdoing. This latter contention respecting separately owned vessels is the law of this circuit and generally of the admiralty as stated by this court in a case relied upon by appellant, United States v. Laflin, 9 Cir., 24 F.2d 683,

---

[1] Each of the thirteen crew members have one share. The captain has an additional half share and a fisherman furnishing the net an additional 2½ shares. No tax deductions made from the net owner's share. The vessel owner is entitled to three and one-quarter shares, of which it gives the one-half share supra to the captain.

685, reported also as The Lydia, 1928 A.M.C. 700, and cases therein cited. However, as that case states, the owner as trustee or guardian of the crew must "bring the action as representing the crew" to recover for another vessel's fault, and appellant's contention resolves itself into the following proposition:

Since appellant, trustee for the Bessemer's crew and under a duty to them to bring an action as representing them, cannot sue itself for its, the trustee's wrongdoing in navigating its other vessel, the Gloria R, the Bessemer's crew has no right in admiralty for any recovery for its trustee's wrongful act. This reductio ad absurdum answers appellant's contention.

■ While an admiralty court does not have general equitable jurisdiction, it acts upon equitable principles and should give relief where a court of equity would relieve and a court of law would not. Watts v. Camors, 115 U.S. 353, 361, 6 S.Ct. 91, 29 L.Ed. 406; O'Brien v. Miller, 168 U.S. 287, 297, 18 S.Ct. 140, 42 L.Ed. 469; United States v. Cornell Steamboat Co., 202 U.S. 184, 194, 26 S.Ct. 648, 50 L.Ed. 987; Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 457, 55 S.Ct. 475, 79 L.Ed. 989. We hold that appellee's libel states a cause of action against appellant. Cf. The Petrel [1893] L.R.P. 320, 62 L.J., p. 92.

Appellant, while not contending that the district court erred in holding its vessel, the Gloria R, was in fault, claims that the damages should be divided because of the failure of the Bessemer to have a proper lookout singly devoted to observing the approach of the Gloria R and because not maintaining the Bessemer's white masthead light as required by Article 2 of the International Rules, 33 U.S.C.A. § 72.

■■ We agree with the appellees that neither the absence of the masthead light nor the conduct of the lookout could possibly have contributed to the collision, within the rules of The Pennsylvania, 19 Wall. 125, 136, 86 U.S. 125, 136, 22 L.Ed. 148, and The Ariadne, 13 Wall. 475, 80 U.S. 475, 20 L.Ed. 542. We think the case is within our decision in The Redwood, 9 Cir., 81 F.2d 680, 686.

The master and lookout of the Gloria R at all times in a mile approach to the Bessemer saw that the Bessemer and her green running light. It is uncontradicted that the Bessemer's lookout and captain saw the Gloria R during her mile approach. That during that time, the lookout also observed the school of sardines about which the Bessemer was about to cast her nets does not mean that his continuous observance of the Gloria R was impossible. The trial judge heard and believed his testimony and it is not for us to question his conclusion.

■ Appellant claims that the Bessemer deceived the Gloria R because she was slowly navigating to surround the school of sardines in a counter clockwise movement, whereas the customary method was clockwise. On this claimed custom, the evidence is conflicting and we cannot disregard the determination of the trial judge who heard the witnesses.

Appellant claims that a written agreement for a charter of the Bessemer to Salbatore DiLeva her master, in the 1944-45 season here in question, for fishing in the 1941-42 season, is still controlling by a verbal extension by the then charterer and appellant to the 1944-45 season. It contains a provision that neither charterer nor owner "shall be liable to the other for any loss of time or other damages, other than damage to the vessel or machinery, caused by the loss of use of the vessel by any reason whatsoever, including defects to hull or machinery."

■ We are unable to understand why appellant is urging in this court that this charter provision applies. In the first place, the charter was not introduced in evidence, though marked "Introduced for the purpose of identification only." Appellant's motives for not introducing it are obvious. It provides for a chartering of the vessel, with a crew to be employed by the charterer, while from the beginning and throughout the proceedings below, and now here, appellant's position is that it, the owner, employed the crew. It also provides that the fish caught belonged to the char-

terer to be sold to appellant, while appellant has continuously maintained below and here that for the 1944-45 season the catch belonged to the owner. In addition, DiLeva testified squarely that there was no written agreement for the later season. In this situation we decline to consider the charter in evidence or its provisions here applicable.

Appellant further contends that the district court erroneously computed (a) at ten the number of days lost while the Bessemer was laid up and (b) the number of days computed at 45 for the subsequent period of fishing, whose total catch was divided by 45 for an average day's catch for the layup period.

The libel alleged that the layup was from October 4, 1944, "to on or about October 13, 1944." The burden of proof is on the libelants. They offered no proof that the Bessemer was laid up on the night of October 13th. On that night and the following morning of the 14th, the moon rise was not until after 5 o'clock. That is to say, there was practically a full night's fishing on the night of the 13th. Later in the day of the 14th the Bessemer landed 60,250 pounds of fish. Since fishing for sardine is practically confined to the dark of the moon when their shine is observable, we think the reasonable probability is that the vessel fished on the night of the 13th and that libelants have not maintained their burden of proof that she could not and did not. We hold the layup was but nine days.

The court determined the loss per night's fishing by taking the average of the total of the Bessemer's catch, including that of October 14th, through the remaining 18 days of October, the 30 days of November. This is a period of 48 days. The court erroneously computed it at 45 days.

Appellant contends that the method adopted in computing the day's loss in catch during the layup is erroneous and cites our decision in Atchison T. & S. Fe R. Co. v. California Sea Products Co., 9 Cir., 51 F.2d 466, 468. The basis of a refusal there to allow the daily average of the total catch of six succeeding days' whaling in the waters of San Clemente Island after a six day layup as applicable to the layup's loss of whales is, "The venture of fishing for whales in the untried waters off San Clemente Island [is not] an established business, the profits of which are reasonably capable of ascertainment."

We recognize the California sardine industry has been established in the waters off Southern California for many decades and regard the district court's method of computation of damages as reasonable and appropriate.

The decree is affirmed, subject to a recomputation of the damages on the above findings. The parties are allowed 20 days to file a stipulation agreeing on such recomputation, for entry of a final decree here. Otherwise, the case is remanded to the district court for such redetermination of damages and to enter a final decree there.