ANCICH et al. v. THE MARSHA ANN et al.

KORGAN et al. v. THE MARSHA ANN et al.

HOOPES et al. v. THE MARSHA ANN et al.

No. 8960.

United States District Court
S. D. California, Central Division.
July 18, 1950.

930

David A. Fall, San Pedro, Cal., for libelants.

Lillick, Geary & McHose, and William A. C. Roethke, all of Los Angeles, Cal., for intervening libelants, George Korgan and Sam Bilas.

Tripp and Callaway, Los Angeles, Cal., for respondents.

Ekdale & Shallenberger, San Pedro, Cal., for intervening libelants, W. H. Hoopes and Nick Milosevich, George Korgan and Sam Bilas.

CARTER, District Judge.

This decision concerns the right of fishermen employed upon a lay plan to maintain a libel in rem and in personam in their own names against a vessel which negligently collided with the vessel on which they were employed, and thereby caused them to lose their share of a prospective catch of fish during the repair of their vessel.

The Bear and the Marsha Ann, fishing vessels of 65 feet and 100 feet in length respectively, collided in the fog two miles off the breakwater of Los Angeles harbor on the morning of November 30th, 1948. Ten days later seven of the fishermen on the Bear filed a libel in rem and in personam for damages and maintenance against the Marsha Ann and her owners. The crew of the Bear consisted of the two owners, Korgan and Bilas, and nine fishermen. The fishermen were employed on what is commonly known as a lay plan under which their compensation (instead of wages), was to be a share of the proceeds resulting from the fishing venture. The two owners also had shares, both as owners and as fishermen.

Subsequently Korgan and Bilas, owners of the Bear, filed an intervening libel against the same respondents seeking recovery only for the damages sustained by their vessel and the cost of repair.

Then on December 2, 1949, almost a year later, but before trial, the two owners of the Bear joined by the two remaining fishermen on that vessel, filed another intervening libel in which the owners sought to recover damages for the loss of the use of the Bear during the remainder of the fishing season and also their share of the probable catch as fishermen, in addition to their share as owners. The two remaining fishermen libelled for their respective shares also.

The cumulative result of the original libel by the Bear's fishermen, and two subsequent intervening libels was an action in rem and in personam against the Marsha Ann and her owners by the two owners of the Bear and her nine fishermen. The own-

ers sought to recover for damages to their vessel, loss of her use, and their shares of the probable catch for the remainder of the fishing season, both as owners and as fishermen. The nine fishermen prayed that they be allowed to recover their shares of the expected but unrealized profits of the venture.

The respondents answered by general denial, and at the start of the trial, by stipulation, the Marsha Ann and her owners were permitted to amend their answers by the addition of a further defense to the effect that the original libel of the seven fishermen and the intervening libels of the remainder of the Bear's crew failed to state a cause of action upon which relief could be granted, and in particular that the fishermen did not allege that they owned the boat or the fish, nor did they allege any tort injury to themselves. It was the further contention of the respondents that the fishermen's rights are solely those of contract; that the fishermen's showing would consist of evidence that the Marsha Ann negligently interfered with that right and that although courts will give relief for intentional interference with contract rights, relief for negligent interference with contract rights will not be granted.

In support of their argument the respondents rely on Robins Dry Dock and Repair Co. v. Flint, 1927, 275 U.S. 303, 48 S.Ct. 135, 72 L.Ed. 290. In that case the owners of a vessel time-chartered her to libelants. The owners docked her with a dry-docker under a provision of the charter providing for docking every six months and suspending payment for hire during the period of this service. The dry-docker negligently broke the propeller, causing the ship to be laid up longer than anticipated. The time charterers libelled the vessel for damage for loss of use. The district court allowed recovery and the court of appeals affirmed. The dry-docker then sought certiorari. The Supreme Court, in reversing, held that a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other, unknown to the wrongdoer.

We hold that the decision in the Robins case is not controlling. The facts in the case at bar are entirely different. Fishermen, serving on a vessel under a lay plan, where their compensation for services is dependent upon the success of the venture, are not charterers. The Carrier Dove, 1 Cir., 97 F. 111, 38 C.C.A. 73. Nor is there any contractual relation between their employer and the tort-feasor as in the Robins case between the owners and the dry-docker. The damages which the charterers sought to recover from the dry-dockers in the Robins case consisted of the profits they would have realized from other sources in no way connected with the use of the boat by the owner, the person in possession.

In the Robins case, the Supreme Court said, 275 U.S. at page 309, 48 S.Ct. at page 135, 72 L.Ed. 290: "* * * The decision of the Circuit Court of Appeals seems to have been influenced by the consideration that if the whole loss occasioned by keeping a vessel out of use were recovered and divided a part would go to the respondents. It seems to have been thought that perhaps the whole might have been recovered by the owners, that in that event the owners would have been trustees for the respondents to the extent of the respondents' share, and that no injustice would be done to allow the respondents to recover their share by direct suit. * * *" and then rejected this theory.

The law is otherwise in the case of seamen employed upon a lay plan, and recovery may be had by the owner of the vessel in behalf of the fishermen for their prospective share of the catch. Taber v. Jenny, D.C.Mass.1856, 23 Fed.Cas. 605, No. 13,720; U. S. v. Laflin, 9 Cir., 1928, 24 F. 2d 683.

It is well-settled law that damages for the detention of a commercial vessel are to be measured by the profits which the owner would have realized from her use, had she been free. The Potomac, 1881, 105 U.S. 630, 26 L.Ed. 1194; The Conqueror, 1897, 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937; The Wolsum, 5 Cir., 1926, 14 F.2d 371; The Priscilla, D.C.1928, 27 F.2d 921.

■ In the case of fishing vessels, probable earnings, when proven with reasonable certainty, are included as an item of damages arising from a tortious detention. The Mary Steele, D.C.Mass.1874, 16 Fed.Cas. page 1003, No. 9,226; The Columbia, D.C., E.D.N.Y.1877, 6 Fed.Cas. page 173, No. 3,035; Woodbury v. U. S., 75 F.Supp. 829, 1948 A.M.C. 445; Pacific Steam Whaling Co. v. Alaska Packers Ass'n, 1903, 138 Cal. 632, 72 P. 161.

We entertain no doubt but that the owners of the Bear could libel the Marsha Ann, and any damages recovered would include the anticipated earnings of the Bear for the period she was undergoing repairs. And the crewmen, being entitled by the terms of the lay plan to a share of the profits, would be able to assert their claim to their aliquot portion of the amount recovered by the owner. See U. S. v. Laflin, supra. In that case the owner of a sealing vessel, operating under a lay plan, recovered damages from the United States for unwarranted interference with the ship's sealing operations. The award of the court included expected earnings, and the owner was made trustee thereof for the satisfaction of the crewmen's claims. Thus, eventually, the crewmen recovered their loss by sharing in the recovery of the owner. Although the action was brought under a special statute, June 7, 1924, 43 Stat. 595, 28 U.S.C.A. § 52, the court held that the statute "must be presumed to have been enacted in view of the well-settled principles applicable to the owner's right to represent the crew in such cases" [24 F.2d 685], and permitted the owner to bring the action as a representative of the crew.

The Laflin case, supra, states also in general terms, 24 F.2d at page 685: " * * * it is equally well settled that neither the officers nor members of the crew may join with the owners in a recovery of the proceeds of the voyage, and that the owners of the vessel and projectors of the voyage are the owners of the products thereof. * * *" In support thereof is cited: Baxter v. Rodman, 3 Pick., Mass., 435; Grozier v. Atwood, 4 Pick., Mass., 234; Tabor v. Jenney, 23 Fed.Cas. page 605, No. 13,720, 1 Spr. 315, 322.

■ The dire results foreseen in these cases if members of a crew on a lay plan were permitted to sue are not applicable to the case at bar. The Baxter case refers to the fact that if each seaman was a tenant in common with the other seamen and the owners in the fruits of the fishing voyage, "no action could be brought respecting it (the whaling oil) without joining all, and none could be sued without the whole, giving every seaman the right to discontinue the action or to release the claim or to receive payment for the whole." In our case, all the fishermen have joined in the action. All interested parties are before the court. But if all the fishermen had not joined in the libel an admiralty court has the authority to join as colibelants all the fishermen having a cause of complaint of the same kind to minimize litigation and to adjudicate all interests of a similar nature.

■ The language of the Baxter case, supra, quoted in the Laflin case, supra, refers to both joint ownership and tenancy in common, and makes no adequate distinction between them. The claim of the fishermen is a claim to his undivided share of the catch,—at most, a tenancy in common. As such a tenant in common, he would have no right to "discontinue the action, or to release the claim" as to all, or "to receive payment for the whole." The anticipated procedural difficulties predicted in the Baxter case fails to impress us and is far outweighed by the equity and expediency gained by allowing the fishermen to sue in their own name.

In The Mary Steele, supra, the owners and the crew were both parties to the libel and in The Columbia, supra, the report of the commissioner, exceptions to which were overruled, allowed "the seamen who libelled for their share one-sixth of the catch so estimated". These two cases, although not sustaining the right to a cause of action in the crew alone, throw doubt upon the broad statement contained in the Laflin case "that neither the officers nor members of the crew may join with the owners in a recovery of the proceeds of the voyage."

■ It has long been recognized that the admiralty courts in the administration of justice, deal liberally with seamen. Sea-

men are the special wards of admiralty because of the nature of their services and its accompanying dangers. Benedict on Admiralty, 6th Ed., Sec. 621. The maritime courts, having jurisdiction over seamen, have for generations made every effort to protect their rights and interests. Admiralty rules of pleading are to be liberally construed and in dealing with sailors' rights, admiralty will grant them relief if justice is served, and adjudge their rights where equity and expediency are gained. While an admiralty court does not have general equitable jurisdiction, it acts upon equitable principles and should give relief where a court of equity would relieve and a court of law would not. Benedict on Admiralty, 6th Ed., Sec. 223; Watts v. Camors, 1885, 115 U.S. 353, 6 S.Ct. 91, 29 L.Ed. 406; U. S. v. Cornell Steamboat Co., 1906, 202 U.S. 184, 26 S.Ct. 648, 50 L.Ed. 987; Van Camp Sea Food Co. v. Di Leva, 9 Cir., 1948, 171 F.2d 454.

In Van Camp Sea Food Co. v. Di Leva, supra, the sharesmen were allowed to maintain a libel for loss of earnings due to the lay up for repairs of their vessel from a collision caused by the negligent navigation of another vessel also owned by their employer. But the right of action was allowed the fishermen because the respondent owned both boats. The court reasoned that the respondent could not be expected to sue itself for the benefit of the fishermen, hence the action was allowed on equitable principles. Judge Denman cut through legal form and procedure, and said in substance: Since the fishermen in justice and equity have an ultimate claim to their prospective share of the catch, then they may maintain a cause of action in their own names.

In equity and justice, why should the recovery of loss of profits by seamen serving under the lay plan be contingent on the action taken by their employer?

These fishermen have suffered serious damage as a result of the collision. They have no right of recovery against their master or the owner of the boat unless he be at fault. Reed v. Hussey, 1836, 20 Fed.Cas. page 440, No. 11,646. Their contract of employment is terminated by operation of maritime law upon the breaking up of the voyage as a result of the collision. The Elk, 1938 A.M.C. 714. To refuse them the right to sue in their own names, places them at the whim and caprice of their employer and may involve conflicting interests. Upon the trial of the libel herein both the Marsha Ann and the Bear might be held negligent. True, the fishermen named only the Marsha Ann and not the Bear. However, a recovery by them against the Marsha Ann, if the Bear was also found negligent, would give the Marsha Ann a right to contribution from the Bear. Had the owners of the Bear sued in behalf of the fishermen, it is arguable that there might have arisen conflicts of interests in the prosecution of the libel. These conflicts do not arise when the fishermen sue in their own names.

Benedict on Admiralty, 6th Ed., § 230, states: "§ 230. The Parties. * * * There are no special Admiralty Rules concerning the capacity of parties, whether as infants, incompetents, agents, foreign corporations and the like. In these matters the admiralty courts have largely followed the local State practice; but as they are fully covered by the Federal Civil Rules [28 U.S.C.A.], it would seem logical for the admiralty side of the court to apply Civil Rule 17, which expresses what the admiralty practice has actually been, namely: that actions shall be prosecuted in the name of the real party in interest; * * *".

And in § 245: "The party really entitled to the relief should always be made libelant. There is no Admiralty Rule to this effect, but the practice is of long standing. The Civil Rules put it still more sharply and say that every action shall be prosecuted in the name of the real party in interest: Rule 17(a) * * *."

Certainly the fishermen are the real parties in interest in such an action as this, and as such should be the parties to bring the libel. To restrict the right of recovery of future profits to the owner of the injured fishing vessel, and to make the fishermen's recoupment dependent upon the owner's successful exercise of that right is to deny a cause of action to the real persons in

interest and channels the money rightfully due the fishermen through a third party who is ultimately entitled only to a fractional portion thereof. Aside from the physical damages suffered to the boat, the nature of the losses sustained by owners and fishermen are identical. In amount, the claims of the fishermen usually greatly exceed those of the owner.

For the reasons set forth above, we hold that where all the fishermen of a vessel serving under a lay plan, have joined as parties libelant to recover their share of a prospective catch, they have a cause of action which can be maintained in their names in the district court.