CARBONE et al. v. URSICH et al.

THE DEL RIO.

No. 13302.

United States Court of Appeals Ninth Circuit.

Dec. 21, 1953.

Margolis & McTernan, John W. Porter, Los Angeles, Cal., William B. Murrish, Los Angeles, Cal., on the brief, for appellants.

Allen F. Bullard, San Pedro, Cal., for appellees.

Before BONE, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

This matter is before us upon an agreed statement of the case made by the parties and approved and certified by the district court pursuant to Rule 76, Federal Rules of Civil Procedure, 28 U.S.C.A.

The appellants, libelants below, were fishermen employed as members of the crew of the fishing boat, "Western Pride". Under their contract with the owners of the vessel, their compensation was to be 61% of the proceeds from the sale of the fish caught after allowance of certain specified expenses. None of them owned any interest in the vessel or in its purse seine net. On October 12, 1949, the vessel put out from Los Angeles harbor to fish for sardines. It set its net and secured a substantial catch. While the net was in the water with that catch it was fouled by the respondent fishing boat "Del Rio". The fouling was caused by the negligence of the Del Rio and resulted in the loss of the fish and damaging of the net. In addition, as a direct and proximate result of the fouling and damaging mentioned, the libelants not only lost their share of the proceeds of the catch then in the net but they also lost the means and opportunity for fishing during the period from October 12 through October 15, 1949, which period was required for repairing the net. The trial court found in addition to the facts above stated, that the evidence was sufficient, if recovery was allowed at all, to warrant recovery of damages by libelants against the respondents not only for the loss of the catch enclosed in the net when it was fouled, but also for the loss of prospective catches of fish during the period mentioned. It thereupon appointed a special master for the purpose of computing and determining the damages. The master filed a report to the effect that no damage was recoverable solely by reason of the decision of this court in Borcich v. Ancich, 191 F.2d 392. This report was confirmed by the court and thereafter a decree was entered thereon adjudging that the above named appel-

lants and libelants recover nothing from the respondents and awarded costs of suit to the respondents.

It will be noted that the situation of the appellant fishermen was almost precisely the same as that of the fishermen in Borcich v. Ancich, supra, decided by this division of this court on August 16, 1951. In each case the fishermen were employed on the "lay" plan, and in each case the district court held that the negligence of the respondent vessel was the sole cause of a collision which resulted in damage requiring time for repairs during which the fishermen were deprived of the earnings which they otherwise would have made.

Upon this appeal we are asked to overrule so much of our decision in Borcich v. Ancich, supra, as held that those fishermen were not entitled to recover against the offending vessel or its owners. The case has been extraordinarily well briefed and we have considered with great care the one question here presented which is whether the Borcich case was rightly decided. We have concluded that it was not, and that that portion of it which dealt with the rights of the fishermen should be overruled.

In our former opinion we noted earlier cases which had allowed fishermen members of the crew to recover for loss of prospective profits under circumstances not substantially different from those present here and in the Borcich case. We noted The Columbia, D.C.N.Y.1877, 6 Fed.Cas.No.3,035, p. 173. Another case which we there cited was The Mary Steele, D.C.Mass.1874, 16 Fed.Cas.No. 9,226, p. 1003, in which the fishermen members of the crew were allowed recovery as joint libelants with the owners for their shares in mackerel catches which they lost or were prevented from securing through the negligent injury to a seine net. Although not noted in the Borcich case, the two cases just cited are in accord with the English case of The Risoluto (1883), 5 Asp.Mar. Cas. 93.

We also alluded to another group of cases of which Taber v. Jenny, D.C.

Mass.1856, 23 Fed.Cas.No.13,720, p. 605, is an illustration, in which the owners of the fishing vessel were permitted to recover from the respondents the lay-share belonging to the crew members,[1] in addition to their own damages.

In United States v. Laflin, 9 Cir., 24 F.2d 683, 685, this court cited with approval Taber v. Jenny, supra, and upholding the right of the owners of the vessel to hold the respondents for the fishermen's lay-share of the proceeds, said of that and other cases in accord with it: "It is clear from the foregoing and other like decisions that the funds received by the owners in a case such as this are charged with a trust for the payment of the claims of the officers and crew of the vessel."

The Laflin case, supra, was brought against the United States pursuant to an act of Congress which permitted a recovery for damages and loss occasioned by the interference of United States vessels with sealing in the Bering Sea. Speaking of that statute this court said: "It must be presumed to have been enacted in view of the well-settled principles applicable to the owner's right to represent the crew in such cases, and without intention to exclude from the amount recoverable the shares of members of a crew who were not citizens of the United States." [2]

It will be noted that in Taber v. Jenny, supra, United States v. Laflin, supra, and the other cases in accord, the recovery was by the owner of the vessel on behalf of the crew members. Those cases did not hold that the crew members themselves could sue, although they expressly recognized that the owners hold the crew's share of the recovery in trust for the latter. In Taber v. Jenny, it was said: "If the owners neglect to take proper means to obtain indemnity, they would be responsible to seamen for that neglect." [3] What we think should be particularly emphasized at this point is that without holding the crew members might themselves sue, or even that they might join the owner in suing, as was done in the earlier cases of The Columbia and The Mary Steele, and The Risoluto, yet Taber v. Jenny and United States v. Laflin, supra, did hold that the respondent on its part was liable for amounts thus lost by the crew and must respond in damages accordingly. Under those cases, whatever the procedural rule may have been, as to who may bring the suit, yet as a matter of substance, the liability for those damages was clear.

In the Borcich case, although recognizing and citing these earlier cases, or some of them, we concluded that when in 1927, the Supreme Court decided the case of Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290, it laid down a rule which required us to hold that the fishermen crew members could not maintain an action against the third party tortfeasor who negligently disabled the fishing ves-

---

1. See also in accord Baxter v. Rodman, 1826, 3 Pick., Mass., 435; Grozier v. Atwood, 1826, 4 Pick., Mass., 234.

2. In accord with the Laflin case see Bird v. United States, 9 Cir., 24 F.2d 933; United States v. Peterson, 9 Cir., 28 F.2d 29; United States v. Cunningham, 28 F.2d 865; all brought pursuant to the same enabling act.

3. "The crew's claim is to a share of the proceeds of the voyage; and they have no property in the oil itself. The contract is, that out of the proceeds, when realized, they shall be paid according to their lays. It is the right and duty of the owners to protect the products of the voyage, and if unlawfully taken by any one, to pursue and obtain them, and the seamen have then a right to share in the net avails. The owners must obtain and hold them for this purpose. Otherwise, the seamen could not get redress; they have no title to the property, and could maintain no action for it. If the owners neglect to take proper means to obtain indemnity, they would be responsible to seamen for that neglect. It is not for the respondents to say that the owners will not pay the crew. The respondents certainly have no right to their share; and an individual might as well say, when sued by a guardian, that perhaps he might never settle with his ward." 23 Fed.Cas. No.13,720, pp. 608–609.

sel or her net. Now, after further examination of the same authorities to which we alluded in the Borcich case, we are satisfied that the Robins Dry Dock case did not operate to establish a rule contrary to the previously recognized doctrine that a respondent in a case of this character, must respond in damages for the loss of the fishermen's lay share. We are of the opinion that this liability is enforceable not only at the suit of the owner of the fishing vessel, but also that the fishermen themselves may recover.

As we now view the matter, it must be assumed that Mr. Justice Holmes, who wrote the opinion in the Robins Dry Dock case, was familiar with such cases as The Columbia, The Mary Steele, and Taber v. Jenny, supra. It is noteworthy that the Robins Dry Dock case contains no internal evidence of an intention to reverse a course of prior decisions relating to the liability of persons in the position of the respondent for losses sustained by fishermen such as these appellants. We also note that this court's decision in the Laflin case, supra, and in the other cases cited in note 2, supra, was subsequent to the decision in Robins Dry Dock. Certainly at that time this court did not consider that the rule of Taber v. Jenny had been altered by the Robins Dry Dock case for Taber v. Jenny was cited with approval in the Laflin case.

Further along this line is to be noted our decision in Van Camp Sea Food Co., Inc., v. Di Leva, 9 Cir., 171 F.2d 454, in which this court held that a vessel chargeable with negligence was liable for damages suffered by the crew of a damaged fishing vessel. The court had no difficulty in characterizing what had happened there as an actionable wrong. Its only problem arose out of the dictum of the Laflin case, supra, to the effect that the action to recover for the damages suffered by the crew must be brought by the owner of the vessel damaged. This court held that in that particular case, since both vessels belonged to the same owner, the fishermen themselves could sue. The significant thing about the Van Camp Sea Food case is that this court did not question the proposition that there existed liability to be enforced by someone. This was of course long after the Robins Dry Dock decision.

Now a reexamination of what was said in Robins Dry Dock convinces us that the court was there dealing with decidedly different principles than those which should attach to the situation of these fishermen. The court was dealing with a state of facts upon which it believed there was no liability whatever. The court said: "The decision of the Circuit Court of Appeals seems to have been influenced by the consideration that if the whole loss occasioned by keeping a vessel out of use were recovered and divided a part would go to the respondents. It seems to have been thought that perhaps the whole might have been recovered by the owners, that in that event the owners would have been trustees for the respondents to the extent of the respondents' share, and that no injustice would be done to allow the respondents to recover their share by direct suit. *But justice does not permit that the petitioner be charged with the full value of the loss of use unless there is some one who has a claim to it as against the petitioner. The respondents have no claim either in contract or in tort,* and they cannot get a standing by the suggestion that if some one else had recovered it he would have been bound to pay over a part by reason of his personal relations with the respondents." (Emphasis added.) 275 U.S. at page 309, 48 S.Ct. at page 135. The court held that the charterer of the steamship which was damaged had no property right in the vessel. It noted that the loss to the charterers did not arise from any intentional wrong, but only as a result of negligent acts. It then proceeded to apply the general rule of the law of torts that "a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a

contract with that other unknown to the doer of the wrong." 275 U.S. at page 309, 48 S.Ct. at page 135.

It is quite evident that the court, although dealing with a well established rule of law of torts, was not thinking of the special situation of the fishermen who, as we have here indicated, had long been recognized as beneficiaries under a special rule which made the wrongdoer liable not only for the damage done to the fishing vessel, but liable for the losses of the fishermen as well. This long recognized rule is no doubt a manifestation of the familiar principle that seamen are the favorites of admiralty and their economic interests entitled to the fullest possible legal protection. These considerations have given rise to a special right comparable to that of a master to sue for the loss of services of his servant, or the right of a husband or father to sue for the loss of services of wife or child.[4]

This view which we have taken, requires us to reject the reasoning upon which we arrived at our conclusion in Borcich v. Ancich, supra. The question remains whether in this case, in which the libelants are the fishermen themselves, and not the owners of "The Western Pride" on which they were employed, recovery may be had against the respondent vessel and her owners notwithstanding what was said in the Laflin case, supra, to the effect that the action should be brought by the owners of the fishing vessel.

In Borcich v. Ancich, we said, 191 F.2d at page 396: "If this case presented only a question of capacity of parties to sue it would not be difficult, in light of the liberal rules of pleading and our

decision in Van Camp Sea Food [Co.], Inc., v. Di Leva, 9 Cir., 171 F.2d 454, to sustain the decision of the trial court", [that the fishermen might sue in their own names]. Those "liberal rules of pleading" were referred to in our decision in the Van Camp Sea Food case. See 2 Benedict, Admiralty (6th Ed.) § 245. Cf. The Propeller Monticello v. Mollison, 17 How. 152, 154, 58 U.S. 152, 154, 15 L.Ed. 68: "It is true, that in courts of common law the injured party alone can sue for a trespass, as the damages are not legally assignable; and if there be an equitable claimant, he can sue only in the name of the injured party: whereas, in admiralty, the person equitably entitled may sue in his own name."[5]

If we were to assume for the moment that the owner of the vessel held the fishermen's cause of action in trust for them, so that he would ordinarily be the proper person to sue, yet the right of the fishermen to require him to sue is plain enough. In equity, when a trustee fails or refuses to sue, the beneficiary may join him and the person against whom the cause of action is held to obtain relief. Here the fishermen, the real parties in interest, have brought the libel. No exception or other objection appears to have been made for want of any party. Besides, the owners of the fishing vessel themselves intervened and have recovered damages for injuries to the vessel. All necessary parties were before the court. We find no difficulty under these circumstances in concluding that the appellants are entitled to recover.

If the decision in the Borcich case had merely been predicated upon the proposition that the wrong party had

4. See Prosser Handbook on the Law of Torts, pp. 916, 991; 20 University of Chicago Law Review 283, 291, 292.

5. The idea expressed in the Laflin case that the owner of the fishing boat must bring the action for the benefit of the crew, can be traced to a dictum in Taber v. Jenny, supra. It was dictum because the only question before the court was whether the owner could maintain the

action. Such dictum may have stemmed from what was said in the earlier cases of Baxter v. Rodman, and Grozier v. Atwood, supra, note 1, both of which were cited in Borcich v. Ancich. Those two cases, however, were common law cases, and the things said about the impropriety of joining the crew should not be authority in respect to appropriate procedure in admiralty.

brought the suit and that the action must be brought by the owner of the fishing vessel alone, we might perhaps have been inclined because of the doctrine of stare decisis not to disturb that decision. But convinced as we are that it was wrong, we feel impelled now to overrule it, for failure to do so would mean a withholding from fishermen of all redress for tortious interference with the progress of the voyages which are their livelihood. The basis of the Borcich case is not that the action was brought by the wrong party, but our mistaken holding that there was no liability.

Accordingly the judgment is reversed and the cause is remanded with directions to proceed with the ascertainment of the amount of damages suffered by the appellants and to take such other action not inconsistent with this opinion which the facts may require.