David CUMMINGS, et al., Plaintiffs,

v.

MILLER TIME, Miller Time, Inc., John Doe and James Doe, Defendants.

Civ. Nos. 87–302 HL, 87–303 HL, 87–305 HL, 87–329 HL, 87–330 HL, 87–399 HL, 87–400 HL, 87–495 HL, 87–851 HL and 87–852 HL.

United States District Court,
D. Puerto Rico.

July 15, 1988.

Harry Ezratty, San Juan, P.R., for plaintiffs.

Francisco G. Bruno, Sweeting González & Cestero, San Juan, P.R., for Miller Time, Inc.

## OPINION AND ORDER

LAFFITTE, District Judge.

This action results from the consolidation of a number of actions to recover unpaid wages and compensation for personal injuries incurred by plaintiffs while working on the vessels MILLER TIME and MILLER TIME II. Defendants are the owners and operators and insurer of the vessels, and the vessel MILLER TIME *in rem.* Those plaintiff fishermen seeking unpaid wages based on a proportionate share of fish caught brought their claims pursuant to 46 U.S.C. sect. 596 and F.R.C.P. 9(h). Defendants moved to dismiss these particular wage claims.

Defendants first correctly pointed out that 46 U.S.C. sect. 596 was repealed and replaced by Pub.L. No. 98–89, Sect. 4(b), 97 Stat. 599 (1983), appearing in 46 U.S.C. sect. 10101 *et seq.* Second, defendants argued that sect. 10301(b), which provides that "[t]his chapter does not apply to a vessel on which the seamen are entitled by custom or agreement to share in the profit or result of a voyage," prevents the Court from assuming jurisdiction under the statute.

Plaintiffs acknowledged the applicability of the new statute and countered in the alternative. First, they noted that in the section concerned with wages, 10313, the provisions of subsections (e), (f), and (g) are expressly exempted from application to fishing vessels. Therefore, plaintiffs reason, the remainder of section 10313 applies to fishermen. This argument, however, really does not reply to defendant's unassailable argument regarding the broad profit-share exemption. Additionally, despite the specific and limited fishing vessel exemptions appearing in some but not all of the subsections of the statute, the legislative history indicates a much broader fishing exemption. The comments in the House Report to both the entire seaman protection statute and section 10313 specifically clearly state that the provisions do not apply to fishing vessels. H.R.Rep. 98–338, 98th Cong., 1st sess., 192, 196, reprinted in 1983 *U.S. Cong. and Admin. News* 924, 1004, 1008.

Plaintiffs alternatively argue that dismissal is not warranted because their claims arise under the general admiralty law. *See* Gilmore and Black, *The Law of Admiralty,* 2nd ed., sect. 1–16. Plaintiffs' claim is on a maritime contract, a fishing contract, actions for breach of which fall under admiralty jurisdiction. *See* 1 *Benedict on Admiralty,* sects. 186–187. Traditional maritime remedies were incorporated into the laws of the United States by Art. III, sect. 2 of the Constitution, and remain in effect insofar as they do not conflict with or are superseded by subsequently enacted statutory remedies.

Defendants react to this commonsensical approach by invoking another statute, for the first time, in their reply to plaintiffs' opposition. 46 U.S.C.App. sect. 533 provides that fishermen under a share agreement shall have a lien against the vessel for their unpaid shares for a period of six months after the sale of the fish. Defendants argue that in enacting this statute (3 Stat. 2, 46 U.S.C.App. sect. 531–4) Congress has "occupied the field" of remedies for breach of fishermen's contracts "on lay," thus precluding plaintiffs' *in personam* action against the shipowner. The only admiralty remedy available is the lien against the ship. The *in rem* action is barred in this case, however, because it was instituted more than six months after the fish were sold. Finally, defendants interpret the savings clause in sect. 534 which preserves any actions "at common

law" fishermen may have for shares of fish as proof positive that Congress meant to preclude *in personam* actions under admiralty jurisdiction for fishermen's shares.

At this stage of the pleadings the case was referred to the Magistrate, who recommended that the motion to dismiss be granted based on the inapplicability of the seaman's wage statute, 46 U.S.C. sect. 10301 *et seq.* We have already expressed our agreement with this disposition. The Magistrate did not consider, however, plaintiffs' assertion of general admiralty jurisdiction. We proceed to do so. In the meantime, plaintiffs have filed an objection to the Magistrate's report, stating a rather effete case for applying sect. 10301 *et seq.* and reiterating a rather flaccid appeal for equity. They do not address defendants' arguments on 46 U.S.C.App. sect. 533. We proceed to do so.

## I.

Though defendants argue that Congress has occupied the field of share fishermen's remedies, they really do not mean that. Occupying the field is one of the manners by which Congress preempts local legislation. The issue in this case does not revolve around a federal/state conflict. In fact, defendants reaffirm that an action lies somewhere[1] against the shipowner under Commonwealth law. What defendants dispute is whether a particular action lies under federal common law against the shipowner. The issue, then, is the relative reaches of federal statutory and federal common law, not federal and state law.

The standard for determining whether a federal maritime statute forecloses the application of federal maritime common law was spelled out in *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).

> [B]ecause Congress has never enacted a comprehensive maritime code, admiralty courts have often been called upon to supplement maritime statutes ... The

[Death on the High Seas] Act does not address every issue of wrongful-death law, ... but when it does speak directly to a question, the courts are not free to "supplement" Congress' answer so thoroughly that the Act becomes meaningless. 436 U.S. at 625, 98 S.Ct. at 2015.

In contrast with the stricter federal preemption standard, "evidence of a clear and manifest purpose is not required" to show that Congress intended to supersede, foreclose, or supplant federal common law. The presumption is "that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *City of Milwaukee v. Illinois and Michigan,* 451 U.S. 304, 317, 101 S.Ct. 1784, 1792, 68 L.Ed.2d 114 (1981).

In *Mobil Oil* the Supreme Court ruled that federal common law could not allow damages for loss of society where the Death on the High Seas Act (DOHSA) had not provided for them. DOHSA is a comprehensive wrongful death statute that spells out its jurisdictional reach (3 or more miles offshore), a statute of limitations, and the class of beneficiaries, provides for conversion from personal injury suits, and disallows non-pecuniary damages and contributory negligence as a bar to recovery. Even though federal common law provided a nonstatutory wrongful death remedy in territorial waters within three miles of shore,[2] and allowed damages for loss of society in those waters under that remedy,[3] DOHSA represented Congress' "considered judgment" on all of these issues on the high seas. The statute could not be rewritten *or* supplemented by the courts. The Court went on to imtimate that except for damages, where the issue had already been decided contrary in *Gaudet,*

> DOHSA should be the courts' primary guide as they refine the <u>nonstatutory</u> death remedy both because of the interest in uniformity and because Congress' considered judgment has great force in

---

1. Should we dismiss the claim in admiralty, defendants intimate they would move to dismiss any contract claim under Commonwealth law for want of diversity jurisdiction.

2. *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

3. *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1973).

its own right. *Mobil Oil*, 436 U.S. at 624, 98 S. Ct. at 2014 (underline added).

Looking at the statute involved in this case it is apparent that it is somewhat less comprehensive than DOHSA. This is not surprising considering it is over a hundred years older. Enacted in 1813, the instant statute purports to apply only to "cod" and "mackeral fisheries." This has been extended by the courts to all food fisheries. *See Manchester v. Massachusetts*, 139 U.S. 240, 11 S.Ct. 559, 35 L.Ed. 159 (1891). The statute requires an agreement in writing between the owner and each fisherman,[4] and provides penalties against fishermen who violate the agreement.[5] In sect. 533 the fisherman's lien appears, as well as a mechanism to force the owner to give an accounting and an allowance for set off of expenses. Sect. 534 provides for discharge of the vessel on a bond by the owner.

Defendants would have us accept that this statutory scheme precludes an action in admiralty against the shipowner *in personam* for shares of fish caught. We note first that Congress has not expressly manifested such a result in the statute. Of course, under *Mobil Oil* this is not required. Rather, we must determine if the existence of an action *in personam* against the owner "supplement[s] Congress' answer so thoroughly that [it] becomes meaningless."

The answer is no. The *in rem* action operates in full force. A personal action on the contract does not diminish the statutory lien. There is no reason to believe that a lien will not continue to be the share fisherman's favored remedy. It is a harsh remedy directed against the livelihood of those who own the vessel. Actions *in rem* are virtually unique to admiralty. They are a traditional and necessary product, no doubt, of the far-flung and transient nature of the seafaring industry and those who participate in it. Securing such a right to fishermen on lay follows from the special position seamen hold as wards of the admiralty court. Fishermen on lay are not in partnership with the shipowner, even though working for a share of the profits. Fishermen and other seamen receive special treatment from the courts, including with regard to their wages. In most instances one would presume fishermen would choose to avail themselves of the greater security and exigency a lien affords. A seaman's usual interest is to be paid off in full as soon after arriving in port as possible. But where, for instance, a fisherman agrees with the owner for some reason to temporarily forego his shares, it would work a great injustice for him to thereby completely forfeit the protection of the admiralty court after six months time. This would also hold where a lien on the ship is not physically possible, or not efficacious for any other reason. The share agreement, even if modified, continues in such instance to regulate the relationship between the owner and fisherman. It is a maritime contract and as such falls under the general admiralty jurisdiction.

In addition, unlike the situation in *Mobil Oil*, at the time the fisherman's lien statute was enacted a federal common law remedy already existed. DOHSA was passed in the 1920's. It was not until some fifty years later in *Moragne, supra,* that a federal right to relief for wrongful death in territorial waters was judicially recognized. To take the contours of the upstart maritime remedy and apply them to a situation governed by a preexistent and comprehensive statute would indeed render the statute meaningless. The statute must be interpreted to preclude such reconstruction. It is quite a different matter, however, to hold that a narrow statute which speaks to only a portion of a preexistent federal common law remedy thereby forecloses and condemns the rest of the remedy. As the Court in *Mobil Oil*, 98 S.Ct. at 2015, observed, "[t]here is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted."

## II.

The share fisherman's lien is a part of a traditional ("from the time of Oleron") mar-

---

**4.** 46 U.S.C.App. sect. 531.

**5.** Sect. 532.

itime remedy which has been incorporated into the body of positive law of the United States. *See United States v. Laflin,* 24 F.2d 683 (9th Cir.1928); *Reed v. Hussey,* Fed. Case No. 11,646, 20 Fed.Cas. 440, Blatch. & H. 525 (S.D.N.Y. 1836). The entire cause of action is described in the following.

> There is indeed a class of cases ... over which the admiralty holds an undisputed jurisdiction. I allude to fishing voyages in which it is common for the fishermen to be engaged for a share of the proceeds of the voyage, instead of wages at a fixed rate. [citing act now appearing 46 U.S.C.App. sect. 531 *et seq.*] ... The shares for which they contract are in the nature of wages, [6] <u>and an action of assumpsit lies at common law, or a libel may be brought in the admiralty</u> for their share of the proceeds or profits of the adventure ... (underline added).

*The Crusader,* Fed.Case No. 3,456, 6 Fed. Cas. 926, 1 Ware 437 (D.Me.1837). Two actions are described: a contract claim at common law and a libel in admiralty. The contract claim would of course be *in personam* against a contracting party (ship-owner). The nature of the libel is not revealed. It does not specify a libel *in rem.* To the contrary, ancient caselaw generally considered an action by fishermen for shares against the shipowner *in personam* to be traditionally within the maritime jurisdiction. *U.S. v. Laflin, supra.* Often the existence of the traditional remedy for fishermen on shares was used to justify granting the same remedial rights to whalers and ordinary seamen on shares, including the right to proceed *in personam* against the shipowner. *See Reed v. Hussey, supra; Coffin v. Jenkins,* Fed.Case No. 2,948, 5 Fed.Cas. 1188 (C.C. Mass.1844). In *Joy v. Allen,* Fed. Case No. 7,552, 13 Fed.Cas. 1163, 2 Woodb. & M. 303 (C.C.Mass.1846), the Court held that a lien was not available for whaling shares with-

out a particular statute authorizing it, such as the one for fishermen (3 Stat. 2). But, as a claim in the nature of wages, whaling shares, like fisherman's shares, could be sued for *in assumpsit* or by a libel against the shipowner in a court of admiralty. *But see, Crowell v. Knight,* Fed. Case No. 3,445, 6 Fed.Cas. 910, 2 Lowell 307 (D.Mass.1874) (whaling shares are wages, and lien exists.)

Discovering that traditionally a maritime remedy existed for fisherman against the shipowner for shares may not, perhaps, quite lay the issue to rest. Defendants would have the Court hold that Congress' imposition of the statutory lien automatically precluded courts from supplementing the statute by continuing to recognize a fisherman's traditional *in personam* remedy.

Just as defendants failed to prove this argument under the standard enunciated in *Mobil Oil,* so do they fail to marshal case-law in its support. It is true that in many recently reported cases plaintiff fishermen seeking shares proceed *in rem* against the vessel. Rather than proving that an *in personam* remedy does not exist, this state of affairs tends to bear out the Court's determination that the nonstatutory *in personam* action does not render the lien statute meaningless or force it into disuse. The lien is the stronger remedy and can be expected to be turned to wherever possible.

Several cases,[7] not cited by either party, have expressly recognized the right of fishermen to proceed in admiralty against the owners *in personam* for their rightful shares of the catch.

> They were hired fishermen, whose wages were dependent on the success of the fishing in which they engaged. Fishermen are seamen, having uses and customs peculiar to their business, but are at the same time, except as modified by their peculiar contracts, express or implied, protected by the law as other sea-

---

6. A claim for shares of fish is "a claim in the *nature* of wages, but is not *eo nominie* for them. *Joy v. Allen, infra.* Hence the exclusion of share fisherman from the *seaman's* wage statute 46 U.S.C. sect. 10301 *et seq.* and its predecessors.

7. The whaling cases cited *supra* but not by either party recognize in dicta, as discussed, the compatible existences of the *in personam* remedy and the fisherman's lien.

men are. <u>For their wages they can look to the vessel, her master, and ordinarily her owners</u> (underline added). *The Carrier Dove*, 97 F. 111, 112 (1st Cir. 1899). *See also, Fee v. Orient Fertilizing Co.*, 36 F. 509 (E.D.N.Y.1888). The court in *Old Point Fish Co. v. Haywood*, 109 F.2d 703 (4th Cir.1940), a case cited by defendants, expressly declines at p. 707 to decide whether it had jurisdiction in admiralty over the *in personam* action. The fisherman had proceeded *in rem* for their shares and the issue was not before it.[8] Nevertheless, three pages earlier the court declared in dicta that fishermen on lay are "treated as seamen, and there have been numerous decisions enforcing the rights of the crew against the <u>owner</u> and the ship [underline added]."

Furthermore, recognition of a nonstatutory *in personam* action is not an isolated example of the court's supplementing this particular lien statute. We have already seen that the courts have expanded the reach of the statute by including all food fisheries under it, not just the "cod" and "mackerel fisheries" provided for in the statute. It seems the courts have not adopted the hands off approach to the entire area addressed by the statute which defendants would have us employ.

Finally, defendants' view of the savings clause of sect. 534 is too sweeping. Defendants amass an impressive array of cases proving that when Congress expressly preserves any "action at common law" it means good old Anglo–American common law, not federal common law. Indeed it has only been relatively recently that the Supreme Court has acknowledged the existence of "federal common law." Defendants' argument is that Congress could have preserved the federal common law *in personam* remedy if it had so intended, citing another string of examples where Congress did exactly that. Because Congress merely preserved in sect. 534 state common law actions, only they and the lien are cognizable claims. The obvious problem with this interpretation is that Congress could not have expressly preserved a federal common law remedy in 1813 when the statute was written because the concept of federal common law did not exist at that time. The simplest and most efficacious interpretation is that the savings clause by its own terms preserves all state common law claims. There is no reason, however, to believe such preservation has any bearing on the viability of the federal common law, or admiralty, claim at issue in this case.

WHEREFORE, defendants' motion to dismiss is DENIED.

Plaintiffs' motion for sanctions, attorney's fees, and costs is likewise DENIED.

IT IS SO ORDERED.

---

8. The Fourth Circuit has, by no means, been the only court to expressly not decide the issue.

*See,* for example, *Marshall v. S & S Marine Supply, Inc.,* 654 F.Supp. 160, 162 (E.D.Va.1987).