## UNITED STATES v. CUNNINGHAM et al.

Circuit Court of Appeals, Ninth Circuit. October 29, 1928.

No. 5507.

George J. Hatfield, U. S. Atty., of San Francisco, Cal.

J. N. Gillett and H. H. North, both of San Francisco, Cal., for appellees.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

RUDKIN, Circuit Judge. This case belongs to the same general class as the numerous cases decided by this court and reported under the title of Bird v. United States (C. C. A.) 24 F.(2d) 933. The plaintiff recovered judgment below, and the defendant has appealed. The appellant urges two grounds for reversal: First, insufficiency of

the evidence to support a finding that a voyage to Bering Sea was undertaken by the vessel, and, second, insufficiency of the evidence to support a finding of interference with the voyage by the United States.

■ The American schooner Mascot cleared at the Port of San Francisco on February 3, 1893, for fishing and hunting. According to the shipping articles the vessel was bound from the Port of San Francisco on a hunting and fishing voyage in the Pacific Ocean and elsewhere, as the master might direct. The widow of the master testified that immediately before leaving San Francisco her husband informed her that he was going to the Japanese Sea and the Bering Sea to hunt seal, but she was unable to give a more definite description of the voyage. One of the part owners of the vessel testified that the vessel intended to seal in Bering Sea during that year, but he was not the managing owner and, like the widow of the master, was unable to give more definite information. There was other testimony tending to show that many of the vessels engaged in sealing at that time hunted along the Japanese coast until the season closed there and then proceeded to Bering Sea, where they hunted until the close of the season in September. The mate on the vessel during the voyage in question testified that the Mascot proceeded from San Francisco to the coast of Japan, that the crew hunted there until early in June when the vessel put in to Hakodate for water and provisions, and that they did not go into the American side of Bering Sea because the master informed them that they were not permitted to go there, stating that he had received orders on shore to that effect and that if they went into Bering Sea the vessel would be seized. After leaving Hakodate the vessel sailed along the Kuriel Islands, where three or four seal were taken, and then returned to San Francisco. The master of another vessel, who was in the Port of Hakodate at the time, testified that he met the master of the Mascot and had several conversations with him concerning the proclamation and the closing of Bering Sea, but the witness testified to nothing of importance beyond this.

We think the foregoing testimony sufficient to support the finding that the Mascot intended to proceed into Bering Sea, and would have so proceeded were it not for the proclamation of the President.

■ We think, too, that there was interference with the voyage within the meaning of the act of Congress. The proclamation warned all persons against entering the waters of Bering Sea within the dominion of the United States for certain purposes, and one or more vessels of the United States were directed to diligently cruise such waters and arrest all persons and seize all vessels found to be or to have been engaged in fur sealing there. It seems to us that this warning, accompanied by directions to enforce it, by the armed forces of the United States, was an interference with the voyage. Most assuredly, the master of the vessel could hardly be required to proceed until he was confronted by the naval forces of the United States in order that the warning might be repeated or his vessel seized pursuant to the warning given. In discussing the question of interference in Bird v. United States, supra, this court said: "But we are not to be understood as holding that, to constitute interference, it is essential that physical force was actually employed. Warning, with threat of force, express or implied, to a vessel in the course of a sealing voyage to or in the forbidden waters, followed by compliance therewith and on account thereof, is thought to be sufficient; but there must have been both warning and resulting compliance." To be sure, the testimony is vague, uncertain, and unsatisfactory, as might well be expected after the lapse of nearly 35 years, but notwithstanding its defects and deficiencies, we deem it sufficient to support the findings and judgment appealed from.

The judgment is therefore affirmed.