**NAUTILUS MARINE, INC.,**
**Plaintiff–Appellant,**

**v.**

**James NIEMELA; John O'Hara; Ocean Beauty Seafoods, Inc., a Washington corporation, in personam; M/V NOR-QUEST, Defendants–Appellees.**

**No. 97–35516.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1998.

Decided March 19, 1999.

Jerret E. Sale, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Seattle, Washington, for plaintiff-appellant.

James W. Talbot, Bauer, Moynihan & Johnson, Seattle, Washington, for defendants-appellees.

Before: CANBY and TASHIMA, Circuit Judges, and TAKASUGI,[1] District Judge.

CANBY, Circuit Judge:

In this admiralty appeal, we must decide whether the rule of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), applies to an allegedly intentional or reckless tort to the property of a third person, which causes loss to the plaintiff only because of a contractual relationship, unknown to the tortfeasor, that

---

1. The Honorable Robert M. Takasugi, Senior United States District Judge for the Central District of California, sitting by designation.

the plaintiff had with the injured party. Nautilus Marine, Inc., appeals from the district court's summary judgment denying its claim for lost profits arising from damage that the defendant caused to vessels chartered by Nautilus. The district court held that the *Robins Dry Dock* rule precluded recovery. We review de novo, *see California First Amendment Coalition v. Calderon,* 150 F.3d 976, 980 (9th Cir.1998), and affirm.

## BACKGROUND

Nautilus chartered two ships, the F/V TOR and the F/V TRADITION, to transport salmon from fishing vessels to shore for processing during the 1994 Prince William Sound fishing season. The two ships were moored at the Valdez City Dock, when a third vessel, the F/V NORQUEST, allided with them and damaged them severely, preventing Nautilus from carrying out its plans. Nautilus sued the NORQUEST, its owner James Niemela, and its skipper John O'Hara, seeking profits it lost as a result of the allision. The parties stipulated that the district court's ruling with regard to defendant O'Hara would apply as well to the other defendants. The district court granted summary judgment in favor of O'Hara on the ground that, under the rule of *Robins Dry Dock,* a maritime plaintiff may not recover in tort for economic loss caused by damage to the person or property of another. Nautilus itself, as charterer, had suffered no property damage because it did not own either the TOR or the TRADITION. Nautilus now appeals.

## DISCUSSION

In *Robins Dry Dock,* the defendant dry dock negligently damaged a vessel's propeller. The time charterer of that vessel sued for its profits lost during the ensuing delay. The Supreme Court denied recovery because the charterer's loss arose only as a result of its contract with the ship's owners,

and the charterer had no protected interest in the vessel itself. The Court explained:

> [A]s a general rule ... a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. The law does not spread its protection so far.

*Robins Dry Dock,* 275 U.S. at 309, 48 S.Ct. 134 (citations omitted). Thus, *Robins Dry Dock* established a general rule, which retains its vitality, against recovery of economic loss caused by a maritime tort to the person or property of another. *See Channel Star Excursions, Inc. v. Southern Pac. Transp. Co.,* 77 F.3d 1135, 1137–38 (9th Cir.1996); *accord Barber Lines A/S v. M/V DONAU MARU,* 764 F.2d 50, 51–52 (1st Cir.1985); *Getty Ref. & Mktg. Co. v. MT FADI B,* 766 F.2d 829, 831–33 (3d Cir.1985); *Louisiana ex rel. Guste v. M/V TESTBANK,* 752 F.2d 1019, 1021–24 (5th Cir.1985) (en banc); *Venore Transp. Co. v. M/V Struma,* 583 F.2d 708, 710–11 (4th Cir.1978); *Federal Commerce & Nav. Co. v. M/V MARATHONIAN,* 528 F.2d 907 (2d Cir.1975).

Nautilus argues that its case differs from *Robins Dry Dock* and the cases applying it, because those cases involved torts of simple negligence. Nautilus alleges that O'Hara intentionally or recklessly steered his vessel into the TOR and the TRADITION, and argues that the *Robins Dry Dock* rule was not intended to protect such a tortfeasor.[2] We can find nothing in *Robins Dry Dock* or its progeny, however, to support the exception urged by Nautilus. The reasoning of *Robins Dry Dock* as well as its language applied generally to damages for tort, when the only damage to the plaintiff arises from its contract with the victim, which was not known to the tortfeasor.[3] Moreover, the exception urged by Nautilus would threaten to

---

2. The defendants dispute that the allision was intentional or reckless, but Nautilus presented the declaration of an expert that the allision was a willful act. The district court ruled that this evidence was sufficient to raise a triable issue of fact as to whether the defendants acted intentionally, recklessly, or merely negligently. We assume for purposes of our decision that O'Hara acted intentionally or recklessly.

3. This court has recognized an exception to the *Robins Dry Dock* rule for economic damages caused to crews of fishing vessels. *See Carbone v. Ursich,* 209 F.2d 178, 181–82 (9th Cir.1953); *Union Oil v. Oppen,* 501 F.2d 558, 568–71 (9th Cir.1974). This exception arises from the tradition that "seamen are the favorites of admiralty," *Union Oil,* 501 F.2d at 567, and Nautilus has made no claim that this exception applies to it.

deprive the rule of much of its practical effect. The line between recklessness and negligence is sufficiently indistinct that extensive litigation would be likely to ensue before *Robins Dry Dock* could be applied in any case. We therefore reject Nautilus's proposed exception.

Nautilus relies on cases holding that *Robins Dry Dock* does not preclude recovery for intentional interference with contract relations. *See, e.g., Getty Ref. & Mktg. Co.,* 766 F.2d at 830; *Dick Meyers Towing Serv., Inc. v. United States,* 577 F.2d 1023, 1025 (5th Cir.1978). The key to these cases, however, is not merely that the tort is intentional, but that the tortfeasor knew of the plaintiff's contractual relation and intended to interfere with it. *See Kaiser Aluminum & Chem. Corp. v. Marshland Dredging Co.,* 455 F.2d 957, 958 (5th Cir.1972). Nautilus has not stated a claim of intentional interference with contractual relations, however, precisely because it did not allege, and could not show, such knowledge and intent. In their absence, the reasoning of *Robins Dry Dock* applies and does not permit liability to arise "merely because the injured person was under a contract with [the plaintiff], *unknown to the doer of the wrong." Robins Dry Dock,* 275 U.S. at 309, 48 S.Ct. 134 (emphasis added).

Nautilus's problem is that, because of the nature of its injury, its true claim of injury is for interference with its contractual relation. It cannot show that such interference was intentional, and therefore actionable notwithstanding *Robins,* because the tortfeasor did not know of the contract. Accordingly, it has attempted to convert its claim into one for intentional allision with the TOR and the TRADITION. But that tactic yields it nothing, because *Robins* precludes Nautilus from recovering solely because of an intentional tort to the owner of the TOR and TRADITION. Of course, if O'Hara had intentionally allided with those vessels in order to interfere with Nautilus's contract, we would have a different case. But an intent to allide with the TOR and the TRADITION does not equate to an intent to interfere with Nautilus's contract. The latter intent has not and cannot be shown.

We conclude, therefore, that the *Robins Dry Dock* rule applies to this case despite Nautilus's allegations that O'Hara acted intentionally or recklessly in causing the allision with the TOR and TRADITION. In so holding, we recognize that the *Robins Dry Dock* rule has been subjected to thoughtful criticism over the years. *See, e.g., M/V TESTBANK,* 752 F.2d at 1051–52 (Wisdom, J., dissenting); Harper, James, and Gray, *The Law of Torts,* § 25.18D, at 638–41 (2d ed.1986). The rule leads to harsh results in some cases. It has been in place for many years, however, and those in the industry have had the opportunity to insure themselves accordingly. Founded as it is in a decision of the Supreme Court, the *Robins Dry Dock* rule is not for this court to change. Any relief in that direction must come from the Supreme Court or Congress.

The judgment of the district court is

AFFIRMED.